BURKETT v. CHESTNUTT. (No. 973.)

(Court of Civil Appeals of Texas. El Paso. May 1, 1919.)

1. APPEAL AND ERROR ⬥739 — ASSIGNMENT OF ERROR—REFUSAL TO SUBMIT SPECIAL ISSUES.

A single assignment of error complaining of refusal of trial court to submit 19 special issues requested, the charges not being germane to each other but presenting several propositions of law and fact, will not be considered, in view of Court of Civil Appeals Rule 26 (142 S. W. xii).

2. TRIAL ⬥350(1)—SUBMITTING SPECIAL ISSUES.

Refusal to submit special issues which deal with immaterial matters is not error.

3. TRIAL ⬥350(2) — SPECIAL ISSUES — EVIDENTIARY FACTS.

Refusal to submit special issues calling for evidentiary and not ultimate facts is not error.

4. TRIAL ⬥351(5)—SPECIAL ISSUES.

Refusal to submit special issues covered by those submitted is not error.

5. TRESPASS TO TRY TITLE ⬥41(3) — EVIDENCE.

In trespass to try title, evidence held sufficient to support finding that the southwest corner of survey owned by defendant was on a river bank, so that land claimed by plaintiff as a survey of land lying between defendant's survey and the river was in fact in defendant's survey.

6. BOUNDARIES ⬥14—"ON THE RIVER BANK" —"NEAR THE RIVER BANK."

The words, "near the river bank," as used in field notes locating the corner of a survey, mean the same as, "on the river bank" (citing Words and Phrases, First and Second Series, Near).

7. BOUNDARIES ⬥36(3)—PLATS.

The plat filed as a part of the description of a survey by the original surveyor, showing a river to be the southern boundary of the sur-

vey, is the best of evidence that the river is such boundary in fact.

8. NAVIGABLE WATERS ⬥36(2)—BOUNDARIES —"THENCE DOWN THE RIVER."

The expression, "thence down the river," as used in field notes of a surveyor of a patent, is construed to mean with the meanders of the river, unless there is positive evidence that the meander line was written was where the surveyor in fact ran it; for such lines are to show the general course of the stream and to be used in estimating acreage, and not necessarily boundary lines (citing Words and Phrases, First and Second Series, Down).

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Trespass to try title by John G. Burkett against J. A. Chestnutt. From judgment for defendant, plaintiff appeals. Affirmed.

Moyers & Creighton, of Mineral Wells, and Bradley, Burns & Hiner, of Ft. Worth, for appellant.

Ritchie & Cousins, of Mineral Wells, and Hood & Shalde, of Weatherford, for appellee.

HARPER, C. J. Burkett filed this suit in form trespass to try title to 290 acres more or less, of land out of the P. M. Yell survey.

Defendant answered by general denial, not guilty, and specially that the land in question is a part of the George Green survey, and for that reason the purported award and sale by the state was void; that he acquired the land in controversy and other lands, by deed dated July 14, 1899, duly recorded, and is now owner in fee simple of same; and pleaded the five and ten year statutes of limitations. To the last pleas the plaintiff urged exceptions, contending that the sole issue in the case is whether the Brazos river formed the south boundary line of the George Green survey. Exceptions sustained.

Trial with the jury submitted upon special issues, and upon the answers judgment was entered for the defendant, from which it comes to us by appeal for review.

[1-4] The first assignment is based upon the refusal of the trial court to submit 19 special issues requested by him. The proposition is:

"That it was error for the court to fail and refuse to submit pertinent and sufficient issues to enable the jury to make findings of fact upon all matters in controversy that would enable the court to render proper judgment upon the facts so found."

These charges are not germane to each other, but present several propositions of law and fact; wherefore we are not required to consider them. Rule 26 (142 S. W. xii); M. K. & T. Ry. Co. v. Neiser, 54 Tex. Civ. App. 460, 118 S. W. 166. But we have carefully considered the charges requested and have

concluded that they are either upon inmaterial issues, or call for evidentiary and not ultimate facts, or are covered by those submitted.

The special issues submitted and the answers are as follows:

"Special Issue No. 1: At what point do you find that the original surveyor who surveyed the Green survey located the southwest corner of said survey?

"Answer to Special Issue No. 1: On a post oak tree which was on or near the river bank, marked 'W.'

"Special Issue No. 2: Did the surveyor who made the George Green survey on May 18, 1852, actually run out and mark the west line of same? (Answer: Yes or no.)

"Answer to Special Issue No. 2: Yes.

"Special Issue No. 3: Did the surveyor who made the George Green survey on May 18, 1852, mark a post oak W. for the southwest corner of said survey? (Answer: Yes or no.)

"Answer to Special Issue No. 3: Yes.

"Special Issue No. 4: If you find that the said surveyor who made the George Green survey in 1852 established the southwest corner of the same at a post oak mark W, then where and at what point in reference to the river or its bank, or the bluff of the river, was such corner tree located? (Answer just as you find.)

"Answer to Special Issue No. 4: On the river bank.

"Special Issue No. 5: Did the surveyor who originally surveyed and located the George Green survey establish the corner thereof on the bank of the Brazos river, under the bluff or mountain, overlooking the said river, as it existed at the time said survey was made? (Answer: Yes or no.)

"Answer to Special Issue No. 5: Yes.

"Special Issue No. 6: Did the surveyor who originally surveyed and located the George Green survey in 1852 actually run out the south line of said survey, from the southwest corner of same to the southwest corner of same, in accordance with the field notes of said survey? (Answer: Yes or no.)

"Answer to Special Issue No. 6: Yes.

"Special Issue No. 7: Where do you find that the original surveyor who surveyed and located the George Green survey located the south line of same, in reference to the Brazos river, and the north line of the Yell survey, as made by H. M. Berry in 1917? (State just as you find.)

"Answer to Special Issue No. 7; On or near the bank of the river."

The second assignment is that the answer to special issue No. 4, and the judgment of the court in response to such question and answer, are wholly unsupported by and are contrary to the testimony in the record that has any probative force.

The third is: The jury having found that the survey of the George Green survey ran the lines on the ground, even if the southwest corner is on the river bank, the next call south 65° east, 1,200 varas, from said point, will leave defendant 200 acres south of said line.

The fourth is that the court erred in determining that the river is the south boundary of the Green survey because it is contrary to the finding on issue No. 6.

The fifth is that the judgment finding that there is no vacant land south of the south line of the Green survey and the Brazos river is contrary to the answer to special issue No. 6, and that the answer to issue No. 7 is so indefinite as that no judgment could be predicated thereon.

The sixth raises the same questions.

That we may more clearly discuss the real question at issue in the case, to wit, should it be held that the Brazos river is the south boundary line of the Green survey, it becomes necessary to here make a statement of facts constituting the history of the location, etc., of the lands in controversy.

The records of the General Land Office of Texas show that in 1852 Chambers filed his report of survey of the George Green survey, of which the following is a copy:

"The State of Texas, Robertson Land District.

"I have surveyed for George Green nineteen hundred and twenty acres of land, by virtue bounty certificate No. 839, issued by Ben F. Hill, Adjutant General, and dated June 6th, A. D. 1851. Situated in Palo Pinto county (Robertson district) on the east bank of Brazos river about 11 miles S. 61° E. of the town of Palo Pinto.

"Beginning on the bank of the Brazos river at the upper corner of 13 labors surveyed for H. Hodges, a stake from which a cottonwood 14 in di. S. 62½ W. 7.2 vs. mkd. A, elm 20 in. brs. S. 86 E. 6.9 vs. mk. H. hackberry 12 in. brs. N. 23 E. 4.8 vs.

"Thence running north with the west boundary of sd. survey 6,406 varas to the N. W. corner of the same, S. E. corner also of 1,920 acres surveyed for J. Dimkin, a rock mkd. A, from which a P. oak mkd. X brs. N. 21 W. 6 & a post oak mkd. M brs. S. 21 W. 10 vs.

"Thence west with the south boundary of sd. 1,920 acre survey passing its S. W. corner, and continuing with the south boundary of 1,920 acres surveyed for Dan'l Bourne, 6,584 varas to his S. W. corner, a rock mkd. B, from which a post oak 14 inches diam. brs. S. 52 W. 8½ varas & another 10 inches di. brs. N. 43½ E. 6 vs.

"Thence south 707 varas to a post oak 8 inches di. mkd. W. near the river.

"Thence down the river S. 65 E. 2,100 varas,

east 400 vs. N. 18 E. 1,590 vs. east 910 vs. S. 45 E. 2,100 vs. S. 10 E. 3,000, S. 25 E. 2,070 vs. to the beginning.

"Surveyed May 18th, 1852. B. J. Chambers, Depty. Survr. for Robertson District. Jno. P. Bailey and N. G. Kerr, C. C."

This survey was patented to the heirs of George Green in accordance with said report in 1869. In 1917, P. M. Yell, "looking for scrap land," as he expressed it, procured one Berry, the county surveyor of Palo Pinto county, to survey and prepare the field notes of the land sued for, and applied to the land office to purchase it as vacant land. The land commissioner returned the first field notes for correction because they did not close. The surveyor testified as to this:

"When I got the field notes back and saw the error, I just took from one line and added to another to make them close. I didn't go down on the ground and remeasure the land."

On the 28th of July, 1917, patent was issued to P. M. Yell.

It is apparent that the George Green west line call of 707 varas south from the southwest corner of the Bourne survey not reaching the river bank by 360 varas is the reason Yell concluded that there was vacant land between the Green survey and the river, because it appears that running from that point S. 65° E. on a straight line 2,100 varas would in fact leave approximately the number of acres sued for between said call and the river bank; but if the surveyor in fact placed the southwest corner upon the river bank, as found by the jury, then there would be much less land between the same call S. 65° E. 2,100 varas, and the river.

But if the court was correct in his finding that the river is the south boundary line of the Green, then there is no land for the Yell survey, and the appellant should take nothing by his suit.

The jury were not asked to find the fact, is the river the south boundary line of the Green as originally surveyed, but they are asked by the fourth to locate the southwest corner, and they answer on the river bank. And by the seventh they are asked where the original surveyor located the south line, and they answer, "On or near the river." So by these quoted findings and the other, they have in effect found that the river is the south boundary line. So, if these findings are supported by evidence, the trial court did not err in holding that the river is the south line, and that there was no vacant land upon which to file for the Yell patent.

[5] The first question raised by the second assignment is: Is there evidence to support the finding that the southwest corner of the Green was established on the river bank?

The original report of the survey with its plat shows that the Green was placed between the river and three older surveys. It begins on the bank of the river at the upper corner, or the Hodges; "thence to the northwest corner of same, S. E. corner of Dimkin survey; thence W. to S. W. corner of Bourne survey; thence S. 707 varas to post oak * * * near the river; thence down the river." The Gray survey lying west, made by the same surveyor, same year in June, patented in 1855, recites its beginning corner, "Beginning on the river bluff at George Green's upper corner," and its closing call, is "thence down the river with its meanders to the place of beginning."

Many witnesses testified to facts which indicated that this corner was in fact upon the river bank, and that the river was the boundary line. Bradford testified that he had lived in the county since 1861 or 1862, and that in 1879 he assisted the county surveyor to subdivide the survey, and that at that time the surveyor seemed to be familiar with the lines and corners of the survey, and that he treated the river as the boundary.

So we think there is an abundance of evidence to support this finding.

[6] In fact, the trial court could have so construed the wording of the patent to mean "on" the river bank, for "near the river bank," as expressed in the original field notes, means the same thing. St. Clair County v. Lovingston, 23 Wall. 46, 23 L. Ed. 62; Brown v. Hugar, 21 How. 305, 16 L. Ed. 130; 5 Words and Phrases, 4689.

[7] As for the contention that, if the corner is on the river that the line S. 65° E. 2,100 varas, still leaves an acreage for the Yell, the answer is that the evidence in this record is such as to make it clear that the river's meanders is the south boundary line of the Green survey from the southwest corner to the southeast corner thereof. Therefore there is no vacant land for the Yell patent. The plat filed, copied above, as a part of the description of the survey by the original surveyor, showing the river to be the boundary, is the best of evidence that it is in fact the south boundary thereof. Boon v. Hunter, 62 Tex. 589.

Appellant's contention is that, the jury having found that the original surveyor actually ran out this line, it must be held to locate the boundary in strict accordance with its course and distance calls from the established corner, because we must follow the footsteps of the surveyor.

It does not necessarily follow that we would follow his footsteps by tracing this course and distance call, because the surveyor may not have written his calls for course and distance as he ran them, and this is the question to be determined by the evidence. There is nothing in evidence to show that he ran this line as written; he does not place it upon his plat filed; it recites no natural or artificial objects by which to trace his foot-

steps. Then by what evidence are we to determine that there was an actual survey of the line and the route taken by the surveyor? The only evidence in this record is the recitals in the original report and in the patent, and the plat filed by the surveyor.

The jury have found that he ran the line on or near the bank of the river, and we are of the opinion that the court could have decided that the river was the south boundary without this finding of the jury.

[8] "Thence down the river" is construed to mean with the meanders of the river, unless there is positive evidence that the meander line as written was where the surveyor in fact ran it. Bland v. Smith, 43 S. W. 49; St. Clair County v. Lovingston, 23 Wall. 46, 23 L. Ed. 62; Brown v. Hugar, 21 How. 305, 16 L. Ed. 130; 3 Words & Phrases, 2194. For such lines are to show the general course of the stream and to be used in estimating acreage, and not necessarily boundary lines.

So we conclude that the trial court did not, in view of the facts of this case, err in holding that the Brazos river is the boundary of the George Green survey, and that therefore the attempted location and patent of the Yell was void.

The cause is affirmed.

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes