J. A. STOVER V. DICK GILBERT, ET AL.

No. 3586.   Decided February 14, 1923.

(247 S. W., 841.)

**1.—Boundaries—Parol Evidence—Reputation.**

Parol evidence concerning an old marked line from an established corner of a survey to the bank of the Brazos river was admissible to establish same as its boundary line, in the absence of evidence that the surveyor who located the survey marked such line on the ground, and in the absence of any call in the patent for the lines and objects testified to by the witnesses. (p. 433).

**2.—Same—River as Boundary.**

Parol evidence of general reputation that the Brazos river constituted the boundary of a survey was admissible, though the calls in the patent from its beginning point on the river where for lines "down the river" following courses and distances which did not correspond with its meanders. (p. 433).

**3.—Same—Courses and Distances on Meandering a River.**

In calls for a boundary line from a point on the bank of a river "thence down the river the following courses and distances," the courses and distances so given, where unmarked on the ground, will not in general prevail over the course of the river itself as the boundary of the survey. Such calls for its meander lines are considered as adopted merely for the benefit of the Government in ascertaining the acreage of the survey, and the interval between them and the river should be taken as included in the survey, not as a vacancy. (pp. 433-436).

Questions certified from the Court of Civil Appeals for the Second District, in an appeal from Palo Pinto County.

The Supreme Court referred the questions to the Commission ·of Appeals, Section A, for their opinion thereon; and this being adopted as its own is certified to the Court of Civil Appeals as the answers to its questions.

*Moyers & Creighton,* W. L. *Dean,* and *Thompson, Barwise, Wharton & Hiner,* for appellant.

Parole testimony is not admissible to change or vary the calls in a grant for land issued by the State, unless the description as set out in the grant is so defective and ambiguous as that the same cannot be located on the ground in the absence of testimony explaining such defects and ambiguities. Hamilton v. Blackburn, 43 Texas Civ.

App., 153, 95 S. W., 1094; Anderson v. Stamps, 19 Texas, 460; Booth
v. Upshur, 26 Texas, 64; Davidson v. Pickard, 56 S. W., 608; Crosby
v. Stevenson, 156 S. W., 1114; Hermann v. Thomas, 168 S. W., 1047;
Goodrich v. Lumber Company, 182 S. W., 348-350; Lumber Company
v. Oil Company, 189 S. W., 759; Reast v. Donald, 84 Texas, 653;
Johnson v. Archibald, 78 Texas, 102; Standifer v. Vaughn, 219 S.
W., 484; Swann, v. Mills, 219 S. W., 850; Schaeffer v. Berry, 62
Texas, 705.

Hearsay evidence is inadmissible to establish by reputation the
boundary line of a survey unless it be shown that the survey was
actually run on the ground and the line established at a particular
place; and especially is this true where the only calls for a particular
boundary of a survey is by course and distance, and no monument,
natural or artificial, being called for in the line defining said survey.
Wynne v. Alexander, 29 N. C., 237, 47 Am. Dec. 326; McCoy v. Gal-
loway, 3 Ohio, 282, 17 Am. Dec., 591; Dunn v. Land, 193 S. W., 699;
Clark v. Hills, 67 Texas, 142; Stroud v. Springfield, 28 Texas, 649;
Howell v. Ellis, 201 S. W., 1022; Lind v. Hustad, 132 N. W., 753;
Maddox v. Lumber Co., 188 S. W., 958; Corpus Juris, Vol. 9, pp.
275-276; Schaeffer v. Berry, 62 Texas, 705.

If there is a discrepancy between the map and the survey, the
survey must prevail, if the position of the points and lines established
by the survey can be proved. Smith v. Boone, 84 Texas, 526; O'Farrel
v. Harney, 51 Calif., 127; Penry v. Richards, 52 Calif., 496; Bean
v. Bachelder, 78 Maine, 186; Coal Company v. Rogers, 65 Pa. St., 418;
Esmond v. Tarbox, 7 Maine, 48; Pike v. Dyke, 2 Maine, 199; Wil-
liams v. Spaulding, 29 Maine, 112; Marsh v. Mitchell, 25 Wis., 706;
Hurt v. Evans, 49 Texas, 311; Koenigheim v. Sherwood, 79 Texas,
408; Schaeffer v. Berry, 62 Texas, 705.

*Penix, Miller & Perkins,* and *Hood & Shadle,* for appellees.

The beginning call of the grant being ''thence down the river''
certain courses and distances in the absence of any evidence that
the surveyor ran the courses and distances on the ground, means with
the meanders of the river, and the parol evidence complained about
in said assignments, if error, is harmless. Williamson v. Simpson,
16 Texas, 433; White v. Smith, 67 S. W., 1028; Johnson v. Archibald,
78 Texas, 96; Richardson v. Powell, 83 Texas, 588; Mason v. Russell,
1 Texas, 721, 730; McKeon v. Roan, 106 S. W., 404; Martin v. Mitch-
ell, 32 Texas Civ. App., 385, 74 S. W., 565; Thompson v. Langdon,
87 Texas, 254; Converse v. Langshaw, 81 Texas, 275; Booth v.
Upshur, 26 Texas, 64; Sloan v. King, 33 Texas, Civ. App., 537, 77 S.
W., 48; Minor v. Kirkland, 20 S. W., 932.

Boundary lines may be proved by the common understanding and
report of a community, and especially is this true with regard to
ancient surveys. Smith v. Russell, 37 Texas, 247; Reeves v. Roberts,

62 Texas, 550; Welder v. Hunt, 34 Texas, 44; Stroud v. Springfield, 28 Texas, 649; Clark v. Hills, 67 Texas, 141; Goodson v. Fitzgerald, 40 Texas Civ. App., 619, 90 S. W., 898; Von Rosenberg v. Haynes, 85 Texas, 357.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This case comes to us on certified questions from the Honorable Court of Civil Appeals for the Second District. The certificate is a lengthy one, and we do not find it necessary to state, other than in a concise manner, the facts which we consider necessary to making disposition of the case.

The suit was brought in the District Court of Palo Pinto County by J. A. Stover against Dick Gilbert and others, in the form of trespass to try title to 512 acres of land in Palo Pinto and Parker Counties, which was patented to him by the State September 23, 1918.

The appellees are the owners of what is known as the east Allen Williams survey of 13 labors, which was patented June 16, 1858. In addition to general denial and plea of not guilty they allege that the land claimed by the appellant Stover was included in and was a part of the east Allen Williams survey which they owned.

Upon a trial of the case in the District Court it was submitted on one special issue, which was answered favorably to the appellees, and judgment was entered in their behalf for the land in controversy, and cancelling the Stover patent. The case was appealed to the Court of Civil Appeals for the Second District, and was there affirmed. However, on motion for rehearing that court has certified two questions for determination.

It is the contention of the appellant that the eastern boundary line of the Allen Williams survey must be located by calls for course and distance from its southwest corner, and when this is done it will leave his survey of land between said line and the Brazos river, and the same will be free of any conflict with the Williams survey. It is the claim of the appellees that the Brazos river is the eastern boundary line of the Allen Williams survey, extending from its southwest corner to its northeast corner, and if this be true then it appropriates the land covered by the Stover patent.

The field notes of the east Allen Williams survey which were made May 16, 1852, and which are incorporated into the patent, are as follows:

"Beginning at the S. E., corner of a survey of 13 labors made for Allen Williams on the N. E. bank of Brazos river, a stake from which an elm 12 in dia bears N. 79 deg. 8.4 varas, another 13 in dia bears N. 25 deg. E. 2.3 varas. Thence down the river the following courses and distances viz: East 700 varas, North 1200 varas, N. 40 deg. W. 940 varas, N. 30 deg. E. 2500 varas, N. 37 deg. E. 760 varas, North

2659 varas, N. 17 deg. W. 1600 varas, N. 18 deg. E. 1500 varas, to a Post Oak on a hill facing the river from which a Post Oak bears N. 1 vara. Thence West 1802½ varas to a Post Oak marked A from which a Post Oak bears S. 21½ deg. 6 varas. Thence south at 2714 varas pass the N. E. corner of said Williams survey 10307 varas to the place of beginning.''

There is practically no dispute about the material facts. The northeast corner of the east Allen Williams survey is well established on the ground, being on a high hill about a quarter of a mile, or farther, from the Brazos river. The north line of this survey, as well as its northwest corner, and its west line are well established and identified on the ground. By beginning at the southwest corner of the Allen Williams survey and following the calls for course and distance to the northeast corner the same will become the west boundary line of the J. A. Stover survey, and will leave it free of conflict. However, by beginning at the southwest corner and running said calls for course and distance the line will cross the Brazos river into Parker County, then run into the channel of the river and follow it for more than a mile distance, and it then leaves the river and runs the balance of the distance on the west side.

It appears that no marks of any kind can be found on the ground showing the location of the different calls for course and distance given for the eastern boundary of the Williams survey, although there is virgin timber along these lines for a considerable part of the entire distance. The meander lines follow the general course of the river, except there is a considerable departure at one place where there is a bend in the river.

The Court of Civil Appeals has forwarded the statement of facts and the numerous plats and maps that were offered in evidence. While we do not customarily refer to the statement of facts for evidence not disclosed by the certificate, yet as the certificate was silent with reference to marks showing the location of these lines on the ground, and deeming the evidence upon the matter material, we have in this instance examined the statement of facts and find the evidence as above stated. The maps and plats were no doubt sent up for our inspection, and we have examined same when necessary.

The trial court submitted to the jury one special issue, as follows:

''As originally surveyed in 1852 by John Patrick, is the Brazos river or not, the east boundary line of the east Allen Williams survey? Answer yes or no, just as you find.''

To this question the jury answered, ''yes.''

Upon the trial a great deal of testimony was admitted with reference to an old marked line running from the northeast corner of the Williams survey a distance of 680 varas to a corner on the bank of the river, which the witnesses testified they had known for thirty-

five or forty years. None of them knew as to when the line was made, or who made it. In one place it is shown that this old line runs south 18 west to the river, while in another place and in the question propounded it is referred to as running south about 680 varas to a corner on the bank of the river. There was also testimony by a great many witnesses who had lived in the neighborhood of this land for many years as to general reputation concerning the east boundary line of the Williams survey, and many of them testified that by general reputation the east line of the survey was the Brazos river. None of these witnesses had seen the field notes in the patent, and none of them knew anything as to the actual survey on the ground, and none of them had any knowledge, except from hearsay and general repute, as to the location of said boundary.

The Honorable Court of Civil Appeals has certified for our determination two questions, in substance as follows:

1. Was parol testimony admissible to establish the old line from the northeast corner of the Allen Williams survey to the bank of the Brazos river as a part or portion of the boundary line of said survey, in the absence of testimony showing that the surveyor who located said survey actually marked said line on the ground, and in the absence of any call in the patent for the lines and objects testified to by the witnesses?

2. If under the facts and circumstances of the whole case parol testimony was admissible for the purpose of establishing by general reputation that the Brazos river was the east boundary line of the Allen Williams survey?

It is our opinion that the testimony with reference to the old line running south 18 west from the admitted northeast corner of the Williams survey was admissible, and we give an affirmative answer to question number one.

We also answer the second question in the affirmative. It is well settled that ancient boundaries, in the absence of opposing evidence sufficient to establish their location, may be proved by evidence of common reputation. This rule has special application under the facts of this case, for the reason that the admission of the parol testimony complained of leads to the same result that follows as a matter of law from the other facts of the case.

It is conclusive to our minds that the calls in the field notes of the Allen Williams survey establish the Brazos river as its eastern boundary, there being an absence of proof showing the location of the meander lines on the ground as called for. It is a rule of general acceptation that meander lines of surveys of land adjacent to or bounding upon a stream are not to be considered as boundaries, but they are to define the general course of the stream, which in itself constitutes the real boundary. The beginning corner of the

Williams survey is on the northeast bank of the Brazos river. From there the call is "thence down the river the following courses and distances." The call "down the river" means with the river (Brown v. Huger, 21 How., 305, 16 L. Ed., 125; St. Louis v. Rutz, 138 U. S., 226, 34 L. Ed., 941), and this will control over the calls for course and distance.

The rule is concisely stated in Corpus Juris, Book 9, page 189, as follows:

"The general rule adopted by both state and federal courts is that meander lines are not run as boundaries of the tract surveyed, but for the purpose of defining the sinuosities of the banks of the stream or other body of water, and as a means of ascertaining the quantity of land embraced in the survey. The stream, or other body of water, and not the meander line as actually run on the ground, is the boundary, the purpose of meander lines being merely for the benefit of the government in ascertaining the quantity of land in the survey for which it requires payment."

In Ruling Case Law, Book 4, page 97, the same rule is expressed in this language:

"In surveying land adjacent to a stream, whether navigable or not, lines are often run from one point to another along or near the bank or margin of the stream, in such a manner as to leave a quantity of land lying between these lines and the thread or bank of the stream. These are called meander lines, and they are not the boundaries of the tract, but they merely define the sinuosities of the stream which constitute the boundary, and as a general rule the mentioning in a deed or grant, of a meander line on the bank of a river as a boundary, will convey title as far as the shore unless a contrary intention is clearly apparent."

We select from the authorities only a few cases, as follows:

Galveston County v. Tankersley, 39 Texas, 652; Burkett v. Chestnutt, 212 S. W., 271; Griffin v. Barbee, 29 Texas Civ. App., 325, 68 S. W., 698; Hardin v. Jordan, 140 U. S., 371; 35 Law. Ed., 428; Peoria v. Central Natl. Bank, 224 Ill., 43, 12 L. R. A. (N. S.) 690; City of Los Angeles v. San Pedro, L. A. & S. L. R. Co., 182 Cal., 652, 189 Pac., 449; Stonestreet v. Jacobs, 118 Ky., 745, 82 S. W., 363.

Under these rules we think it manifest that the Brazos river was intended as the eastern boundary of the Williams survey, and that the calls for course and distance were adopted by mere calculation and intended only for estimating acreage.

There are many facts and circumstances to warrant this conclusion. In the first place, no evidence of any of these lines can be found on the ground, although there is virgin timber along a considerable portion of the distance. It is undisputed that such calls cross the river and also run with the center of its channel for more than a mile. It also appears that if such calls are followed the line

crosses the Levi Current survey, which it seems was made prior to the time the Williams was surveyed. If the Brazos river were at that time a navigable stream, some of the calls would be contrary to the law which did not permit a survey of the land to lay across a navigable stream; but regardless of this, to adopt such calls as the true boundary leads to an absurd condition. It is true the acreage included in the calls for course and distance is about the amount called for in the certificate, but this is a circumstance to show that these calls were inserted by calculation in order to correspond with the quantity of land required. While these boundaries include about the exact acreage, yet when the amount of land east of the river, the amount taken up by the bed of the river and the acreage of the Current survey, is deducted, and the river is accepted as the boundary, it leaves approximately the amount necessary to satisfy the certificate.

This is a case in which we are justified in resorting to the plat filed by the surveyor who made the survey, and when reference is made to the same it shows that the river was the eastern boundary of the survey, and that the meander lines called for by him were intended to delineate the general course of the river. The plat was not only admissible, but furnished very reliable evidence as to the true boundary of the survey.

The recent case of Burkett v. Chestnutt, 212 S. W., 271, decided by the Court of Civil Appeals at El Paso is very similar to the present one, and involved lands in the vicinity of the Williams survey. As far as applicable under the facts in this case, we think it states correct principles.

The case of Galveston County v. Tankersley, 39 Texas 659, 660, is so nearly a parallel case with the present one that we take the privilege of copying from the opinion therein the following excerpt:

"There seems to be a conflict in the calls for this line as set out in the patent, since it calls for the meanders of the river and also for courses and distances, and these do not correspond with each other. The calls in the patent for the northeast boundary of the survey are as follows: beginning at the designated point and running thence up the river with it meanders north 60 deg. east 850 varas, south 43 deg. east 1,700 varas, north 57 deg. east 1.150 varas, north 15 deg. east 1,720 varas, north 41 deg. west 2,100 varas, north 31 deg. west 1,140 varas, to the northeast corner at the mouth of a creek. Now it is apparent from the evidence and admissions of the parties, that if the river be meandered for the northeast boundary of the survey, then the calls for the courses and distances to form the same line must be abandoned; and if the meanders of the river be abandoned, and the courses and distances be followed, then there will be remaining between the northeast boundary of the Galveston county league and the river several small tracts of land, on which the appellees have settled. There can be no doubt that the locator intended

to include all the meanders of the river from the southeast to the northeast corners of the survey, both of which extended to the river. The intent of the locator and surveyor may also be gathered from the form of the survey, which is the legal form for surveys fronting on navigable streams.   It is, however, very evident that the surveyor never run this line, since, if he had not intended to .make the survey follow the river, he would have run a straight line from one corner to the other.   There can be no object for so many angles unless it was upon the supposition that they would follow the meanders of the river.   But the lines were never run, for no surveyor's marks can be found on the designated lines; besides, if they had been run, they would have been found to cross the river in more than one place, and leave small tracts of land along the river, surrounded by the river and the Galveston county survey. These facts show conclusively that no line was run as called for by the courses and distances, while the patent calls for the meanders of the river.   What, then, is the rule for determining the boundary?

"The doctrine that wherever there is a conflict in the calls, or when the true line is uncertain, natural objects, such as rivers or mountains, will control calls for course and distance, has become too well settled to be questioned now.   In the cases of Urquhart v. Burleson, 6 Texas, 503; Robertson v. Mason, 26 Texas, 248; and Booth v. Strippleman, 26 Texas, 441, this question was reviewed in the light of all the authorities and settled beyond controversy; and in the case of Anderson v. Stamps, 19 Texas, 460, it is said the object to arrive at is the intent of the grantor.

"We think the certain natural boundary of the river called for in this patent must control the evidently unknown, conflicting and absurd calls for course and distance.   It was beyond question the intention of the grantor and grantee to have the patent cover the land within the bend of the river, and to have the boundary defined by that natural and certain object; and if the survey contains a few more acres of land than the patent calls for, it will not vitiate the grant nor authorize trespassers within its known boundary."

It being our conclusion that in the absence of evidence to show the location on the ground for calls for course and distance, and in the absence of proof to clearly indicate a contrary intention, the Brazos river must be held to be the eastern boundary of appellee's land, it follows that the finding of the jury is correct, regardless of the controverted issues submitted by the Honorable Court of Civil Appeals, and we answer the questions submitted as above shown.

### BY THE SUPREME COURT.

The opinion of the Commission of Appeals answering . certified questions adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton,* Chief Justice.