## GOODIE GOODIE SANDWICH, Inc., v. STATE.

### No. 12884.

Court of Civil Appeals of Texas. Dallas. March 2, 1940.

Rehearing Denied March 30, 1940.

General of Texas, and Hon. Andrew Patton, District Attorney of Dallas County, Texas, instituted this suit against Goodie Goodie Sandwich, Inc., to enjoin it from selling, possessing for the purpose of sale, or in any manner distributing, storing, soliciting or taking orders for alcoholic beverages, except beer containing not in excess of 3.2% of alcohol by weight, within the area known as Justice Precinct No. 7 of Dallas County, Texas. The proceeding is brought by virtue and upon authority of the Liquor Control Act of the State of Texas (R.S. art. 5110).

The undisputed evidence shows that appellant is conducting and operating a place of business, in the manner above suggested, at a location in Dallas County, about 750 feet east of the east levee of the present diversion channel of the Trinity River, and west approximately 550 feet from the old or abandoned channel of the river. The territory comprising the area where appellant's place of business is located has been recognized as being in Precinct No. 7 since its creation in 1880 by the Commissioners' Court of Dallas County, the Trinity River being its east boundary line. In 1890, local option was adopted, prohibiting the sale of intoxicating liquors within the prescribed limits of said Precinct, and since that time, local option has never been repealed, nor has there ever been an election held in the Precinct, involving the sale, barter or exchange of vinous or malt liquors containing in excess of 3.2% of alcohol by volume. In 1933, under provisions of our State Constitution (Sec. 20, Art. 16), see Laws 1933, p. 971, Vernon's Ann.St., a majority of the qualified voters of the Precinct determined by vote that only the sale of beer containing not more than 3.2% of alcohol by weight should be legalized within the limits of Precinct No. 7, thus leaving unaffected the inhibition of local option for all other intoxicating liquors, as determined by the election of 1890.

The sole question to be determined in this appeal is, whether appellant's place of business lies within Precinct No. 7, as said Precinct existed in 1890 when the valid local option election was held, and the sale of intoxicating beverages containing alcohol in excess of 3.2% by volume was prohibited. If Precinct No. 7 was laid off and designated by the Commissioners' Court in 1880, to include the territory west of the Trinity River, following the meanders of the river as its eastern boundary,

Andrew Priest, of Dallas, and Lasseter, Simpson, Spruiell & Lowry, of Tyler, for appellant.

Gerald C. Mann, Atty. Gen., W. P. Watts, Fred C. Chandler, and Geo. W. Barcus, Assts. Atty. Gen., and E. G. Moseley, Harold McCracken, and David M. Weinstein, Assts. Dist. Atty., all of Dallas, for appellee.

BOND, Chief Justice.

The State of Texas, acting upon the relation of Hon. Gerald C. Mann, Attorney

as has been recognized by the law enforcement agencies of the State and County, and the citizens generally of Dallas County, then the sale of intoxicating liquors, other than beer (expressly granted by the election of 1933), is prohibited at appellant's place of business.

■ It has long been recognized by the courts of this State that, when the voters of a county, justice precinct, town or city have, by means of an election properly held, prohibited the sale of intoxicating liquors in such precinct or other political subdivision, it shall thus be unlawful, until the voters of such area shall determine otherwise by an election for that purpose. Intoxicating liquor, once voted out, can only be legalized by a majority vote of the territory that had voted it out. A change or abolition of the precinct or subdivision boundaries would not alter the status of the territory in relation to the sale of liquors. Houchins v. Plainos, 130 Tex. 413, 110 S.W.2d 549; Hill v. Howth, 101 Tex. 620, 111 S.W. 649; Jackson v. State, 135 Tex.Cr.R. 140, 118 S.W.2d 313.

■ Appellant attacks the boundary description of Precinct No. 7 as laid off and designated by the Commissioners' Court in 1880, and again in 1929, as being too indefinite and uncertain for the elections in 1890 and 1933 to include the territory where its place of business is located. In 1880, the boundary line of Precinct No. 7 was, by order of the Commissioners' Court, defined as, "Beginning at the mouth of Five Mile Creek on the Trinity River to the mouth of the West Fork", thus continuing north, northwest, west, and south, with complement calls, to the place of beginning. In 1929, the Commissioners' Court again designated the boundaries of Precinct No. 7 in an effort to make the call, i. e., "Beginning at the mouth of Five Mile Creek on the Trinity River to the mouth of the West Fork", more specific, following the course adopted in 1880; thus, after defining three sides of the Precinct, the call concludes with this description: "Thence N with County line about 9 miles to channel center of W Fork of Trinity River; thence down said stream, with its meanderings to its junction, Elm Fork and Trinity River; thence down the Trinity River, with its meanderings, to the place of beginning." It will be observed that the bound, designated in the order of 1880 as beginning at the "mouth" (the confluence of Five Mile Creek and the Trinity River), suggests no direct course, other than "on the Trinity River to the mouth of the West Fork". The Trinity River is one of the state waterways, denominated in the record as a navigable stream; thus, the call beginning at the confluence of the named creek and river, then "on the Trinity River to the mouth of the West Fork", can have no other course bearing than the meanders of the river.

In R.C.L. 4, p. 97, Sec. 29, the rule is expressed: "In surveying land adjacent to a stream, whether navigable or not, lines are often run from one point to another along or near the bank or margin of the stream, in such a manner as to leave a quantity of land lying between these lines and the thread or bank of the stream. These are called meander lines, and they are not the boundaries of the tract, but they merely define the sinuosities of the stream which constitute the boundary, and as a general rule the mentioning in a deed or grant of a meander line on the bank of a river as a boundary, will convey title as far as the shore unless a contrary intention is clearly apparent."

So, also, in Stover v. Gilbert, 112 Tex. 429, 247 S.W. 841, 843, our Supreme Court, in answering what effect a call down a river has in fixing the boundary line, used the language: "The beginning corner of the Williams survey is on the northeast bank of the Brazos river. From there the call is, 'Thence down the river the following courses and distance.' The call 'down the river' means with the river (Brown v. Huger, 21 How. 305, 16 L.Ed. 125; St. Louis v. Rutz, 138 U.S. 226, 11 S.Ct. 357, 34 L.Ed. 941); and this will control over the calls for course and distance. The rule is concisely stated in Corpus Juris, book 9, p. 189, as follows: 'The general rule adopted by both state and federal courts is that meander lines are not run as boundaries of the tract surveyed, but for the purpose of defining the sinuosities of the banks of the stream or other body of water, and as a means of ascertaining the quantity of land embraced in the survey. The stream, or other body of water, and not the meander line as actually run on the ground, is the boundary, the purpose of meander lines being merely for the benefit of the government in ascertaining the quantity of land in the survey for which it requires payment.' "

We think the undisputed facts and circumstances shown by the State and testified to by numerous witnesses, that the Trinity River has always been considered the bound of Precinct No. 7, that the call in the boundary as beginning at a designated point on the river, and then "on the river" to another fixed point on the river (there being no other designated course revealed by testimony or otherwise), signify that the bound of the Precinct must follow the course of the stream as the real boundary. The beginning corner of the Precinct boundary is at the "mouth" of Five Mile Creek; from there, the call is, "on the Trinity River to the mouth of the West Fork". The call "down the river" can have no meaning other than "with the river". It is manifest that the Trinity River was intended by the order of the Commissioners' Court of 1880, as the boundary line of Precinct No. 7, and that the order of 1929, more definitely designating the bound, "down the Trinity River, with its meanderings, to the place of beginning", merely accentuates the conclusion that the Trinity River, as designated in the order of 1880, is still the local option Precinct boundary line, as determined in the election of 1890; thus, appellant's place of business is located in prohibition territory.

In 1938, the Commissioners' Court entered an order amending, changing, fixing and establishing the boundary lines of Justice Precinct No. 1 and Justice Precinct No. 7, with reference to the Trinity River, so intended to follow the diversion, or new channel of the river, located some 1,300 feet west of the old or abandoned channel, thus leaving the territory where appellant's place of business is located, wholly outside of Precinct No. 7, and definitely fixing the center of the new channel, constructed in 1929, 1930 and 1931, as the proper boundary line of said Precincts. At the time the order was entered, the old channel of the Trinity River had been filled in and, in places, almost obliterated. For such reasons, the Commissioners' Court exercised the discretion conferred upon it by the State Constitution (Sec. 18, Art. 5) Vernon's Ann.St., and Revised Statute (Art. 2351), in changing the boundary of the Precinct to follow the newly constructed diversion channel of the river.

It cannot be gainsaid that the Commissioners' Court had the power and authority to define, re-define, change, or alter the boundaries of precincts within the county,

and to ascertain the facts necessary to the exercise of such powers; but it does not lie within the power of the Court to detach "dry" territory from a "dry" precinct and attach it to a "wet" precinct, thereby making the detached territory "wet", and allowing the sale, barter and exchange of prohibited liquors within the detached territory, perforce of the change.

The trial court, having enjoined the sale, distribution, and possession for the purpose of sale, of all intoxicating liquors, except beer containing alcohol not in excess of the allowable, at appellant's place of business, the judgment must be affirmed; it is so ordered.

Affirmed.