JOHNSON et al. v. PHILLIPS PETRO-
LEUM CO. et al.

No. 6276.

Court of Civil Appeals of Texas.
Amarillo.

Feb. 2, 1953.

George I. Shannon, Amarillo, Price Daniel, Atty. Gen., K. B. Watson, Asst. Atty. Gen., for appellants.

E. H. Foster, T. M. Blume, C. J. Roberts and Culton, Morgan, Britain & White, Amarillo, Howard K. Phillips, Borger, Rayburn L. Foster and Harry D. Turner, Bartlesville, Okl., (Ray Richards, Amarillo, of counsel), for appellees.

MARTIN, Justice.

Appellant, Neil R. Johnson, is the owner of the North half of the North half of Section 64, Block 46, H & TC Ry. Co. Survey, Hutchinson County, Texas. Appellee, Phillips Petroleum Company is lessee under an oil and gas lease on this tract of land, a riparian survey on the Canadian river. Appellant, the State of Texas, is the owner of the river bed of the Canadian river adjoining said Section 64 and executed an oil and gas lease to appellee, J. M. Huber Corporation, which lease is in question in this cause as to the boundaries thereof. The respective parties will be known as Johnson, Phillips, Huber and the State.

Johnson presents two points of error on this appeal. His first point alleges the trial court erred in refusing to submit to the jury the issue of the present location of the south bank of the Canadian river in the vicinity of and where said bank touches Block 46, H & TC Ry. Co. Survey and in dismissing the jury and finding as a matter of law the location of said bank. His second point asserts the court erred in dismissing the jury and holding as a matter of law that the J. M. Huber Corporation's State lease of a portion of the bed of the Candadian river covers the full width of the river bed north of the present bank where it cuts across Block 46, H & TC Ry. Co. Survey.

Under the points raised by all parties only two issues are involved on this appeal. The first issue to be determined is the correct location of the south bank of the Canadian river. The second issue is whether the State oil and gas lease to Huber extends to the banks of the Canadian river.

Upon the first issue, the State, Huber and Phillips assert that the trial court correctly fixed the south bank of the Canadian river at the gradient boundary of the river under the principles detailed in State of Oklahoma v. State of Texas, 260 U.S. 606, 43 S.Ct. 221, 67 L.Ed. 428. Upon the second issue, the State, as appellant, contends that the State lease to Huber does not extend to the banks of the Canadian river but is bounded by the original lines of survey.

The first issue to be determined in the cause is whether the rules followed in Oklahoma v. Texas, supra, outlined in an article entitled "The Gradient Boundary," define a proper method for ascertaining the south bank of the Canadian river. The evidence describing the Red River basin as shown in Oklahoma v. Texas, supra, and the detailed evidence in this cause describing the basin of the Canadian river will not be set forth herein but such evidence, when compared, reveals that the Canadian river basin is practically an exact duplicate of the Red River basin described on page 634 of 260 U.S., on page 225 of 43 S.Ct. in Oklahoma v. Texas, supra. Since

the two river beds are identical, the rules for establishing the gradient boundary define the correct method of ascertaining the south bank of the Canadian river at issue in this cause. . .

Arthur A. Stiles was one of the Commissioners appointed by the Supreme Court of the United States to fix the boundary line along the Red River in Oklahoma v. Texas, supra, and the method Stiles and the Commissioners used in fixing such boundary is clearly described in Vol. 30, Texas Law Review, 305. Stiles entitles his article detailing the rules for locating a river bank such as here in issue, "The Gradient Boundary," and the quotations hereinafter are from such article. The first and essential step in locating the boundary of the river here in issue is finding what Stiles defines as the "lowest qualified bank." This bank is an accretion bank and not a cut bank. After the correct bank has been found a midpoint is "located midway between the lower level of the flowing water that just reaches the bank and the higher level of it that just does not overtop the bank." In this cause, the midpoint as established on the lowest qualified bank was 1.4 feet above the level of the flowing water that just reached the bank. "The surface of the flowing water in the river is the datum plane from which the gradient boundary is located upon the ground." The gradient of the flowing water in the Canadian river, its rate of fall per foot in traveling to the sea, was established at .00106 feet per foot. With these elements established a plane was run from the above midpoint at 1.4 feet on the qualified bank parallel with the surface of the flowing water, and the point where such plane touched the south bank of the river established the gradient boundary line at such point. "The gradient boundary is located upon the ground exclusively with a level, not with a transit, compass, chain, or stadia. After it is located and marked, the line may be meandered in the usual way with the usual instruments." This boundary line follows the surface of the flowing water in the river. "When the surface of the flowing water in the river and the elevation of the boundary coincide, the boundary is on the ground at the feather edge of the water, and stakes driven there will mark the perfect gradient and the perfect boundary. Hence the name, 'gradient boundary.' " . .

An examination of the record in the cause here at issue reveals that the principles set forth for determining the gradient boundary were applied in detail to the Canadian River Bed. Further, the boundary line of the river was checked as to elevation with the surface of the flowing water of the river. The principles for establishing the gradient boundary were the correct method of locating the banks of the Canadian river under the ruling of Oklahoma v. Texas, supra. Since the gradient boundary principles were the only correct rules for establishing the boundary of the Canadian river and there was no disputed issue of fact as to the correctness or incorrectness of the application of such rules, there was no evidence of any boundary other than that so established. Therefore, the trial court correctly withdrew the cause from the consideration of the jury and fixed the south bank of the Canadian river along the gradient boundary shown in the record. State of Oklahoma v. State of Texas, supra; Diversion Lake Club v. Heath, 126 Tex. 129, 86 S.W.2d 441, 446; Motl v. Boyd, 116 Tex. 82, 286 S.W. 458, 467; State v. R. E. Janes Gravel Co., Inc., Tex.Civ.App., 175 S.W.2d 739, 742; Maufrais v. State, 142 Tex. 559, 180 S.W.2d 144.

■ As to the second point in issue on this appeal concerning the boundaries of the oil and gas lease executed by the State of Texas to J. M. Huber Corporation, the following are the pertinent facts necessary to determine the issue: The State admits that the locative survey on the ground by George Spiller as to Block 46 and establishing the corners of Surveys 60 and 69, was a true meander of the banks of the Canadian river. On March 2, 1919, field notes were prepared covering the Canadian River Bed Survey No. 4, pursuant to an application theretofore filed by Lulu Kermicle covering a tract in the Canadian River Bed adjacent to Section 64. On May 7, 1919, an oil and gas permit was issued to Lulu Kermicle, pursuant to her

application, which permit described the land and contained the statement: "Thence down the river with is meanders." This permit was relinquished in 1920. On June 30, 1925, Ray Wheatley applied for an oil and gas permit on the eastern 2080 acres of the Kermicle survey, which application described the land in detail by acreage and contained the following language detailing the extent of the tract as leased: "the width of said river bed which is the width of said survey" and the application further continuing: "with the meanderings of said river." An oil and gas permit was issued by the Commissioner of the General Land Office to Ray Wheatley under date of August 24, 1925, which covered the same tract of land, described it in detail, and contained the statement: "the width of said river bed which is the width of said survey, in a northeasterly direction with the meanderings of said river." On February 7, 1927, an oil and gas lease was executed under the Ray Wheatley permit in the name of Marland Oil Company. The name of Marland Oil Company was changed to Marland Production Company on March 23, 1928 and this Company assigned its interest in the lease to Continental Oil Company. The Continental Oil Company assigned an interest in the lease to J. M. Huber Corporation by an instrument dated August 9, 1935. Thereafter, on January 31, 1937, Continental assigned to Huber all of its interest in the river bed lease. On March 24, 1937, the State of Texas executed a renewal oil and gas lease to J. M. Huber covering the above lands. The renewal lease described the land as "2080 acres being the East part of that part of the Canadian River Bed, Hutchinson County, Texas, covered by Cancelled Permit 3137, formerly located in the name of Lulu Kermicle." This tract originally contained 2560 acres. The renewal lease further described the survey as follows: "the width of said river bed, which is the width of said survey," and also included the description "including all of said survey of 2560 acres as the same extends in a Southwesterly direction with the meanders of said river to a line extending across said river parallel with said county line * * *." J. M.

Huber Corporation of Delaware assigned the lease to J. M. Huber Corporation of New Jersey on December 12, 1946. A renewal oil and gas lease was issued by the Commissioner of the General Land Office to J. M. Huber Corporation under date of May 19, 1947, containing the same description of leased land and the provision, "the width of said river bed, which is the width of said survey, in a northeasterly direction with the meanderings of said river." Corrected field notes were later filed with the County Clerk of Hutchinson County and transmitted to the Land Office where they were received and filed on December 1, 1950 and approved as correct for the acreage shown therein.

Under the above instruments, from which only the pertinent facts are quoted, it is the State's contention that S. H. Chisum, a surveyor, in laying out the original Kermicle survey, followed the original survey lines as laid out by George Spiller and that the Huber lease as a part of such survey is bounded on each side by the lines of Chisum's survey rather than the banks of the Canadian river. It is Huber's contention that their leasehold was a meander survey and that the boundaries of the lease were the banks of the Canadian river and not the lines of survey. To support this contention Huber asserts that the rules governing the fixing of the boundary of their lease were established by the Commission of Appeals in Stover v. Gilbert, 112 Tex. 429, 247 S.W. 841, 843, in that all the leases delivered by the State to it contained the description of the lease as follows: "the width of said river, which is the width of said survey," and also recited that the survey extended "with the meanderings of said river." The rule relied upon by Huber is as follows:

"It is a rule of general acceptation that meander lines of surveys of land adjacent to or bounding upon a stream are not to be considered as boundaries, but they are to follow the general course of the stream, which in itself constitutes the real boundary." Stover v. Gilbert, supra.

Since the language in the various leases and renewals reveals a meander survey

along the banks of the Canadian river, the cause is within the above rule and the leasehold boundaries are the banks of the Canadian river. 11 C.J.S., Boundaries, § 30a, b, pages 572, 573.

Further, an examination of the record reveals that the Huber lease is within an additional rule laid down in Stover v. Gilbert, supra. Such case sets forth an apparent limitation on the rule above quoted as to a meander survey fixing the banks of the river as the boundaries of the lease. On page 842 of 247 S.W. in Stover v. Gilbert, the following language is noted:

"It appears that no marks of any kind can be found on the ground showing the location of the different calls for course and distance given for the eastern boundary of the Williams survey, although there is virgin timber along these lines for a considerable part of the entire distance."

In this connection, it is further observed that the Commission of Appeals examined the statement of facts with reference to whether there were marks showing the location of the survey lines on the ground and stated, "deeming the evidence upon the matter material * * *."

In the cause at issue an examination of the record reveals that there are no marks of any kind that can be found on the ground showing the location of the different calls for course and distance which the State contends fix the boundaries of the Huber lease. In fact, S. H. Chisum, the surveyor, placed on the stand by the State, testified that he only located two or three or possibly four points on the north side of the river when he did his work on the Kermicle survey and only located four, possibly five points on the south side of the river when he did the work. It is therefore apparent that no marks of any kind can be found on the ground showing the location of the different calls for course and distance. Further, Chisum testified that he followed the bank of the river in making the survey. Huber established its lease boundaries within the rules announced in Stover v. Gilbert, supra. Therefore, the trial court correctly interpreted the instruments in issue as a matter of law and fixed the boundary of the Huber lease as the banks of the Canadian river. Stover v. Gilbert, supra; Galveston County v. Tankersley, 39 Tex. 651, 652–659; McCombs v. McKaughan, Tex.Civ.App., 195 S.W.2d 194, error refused; State v. Atlantic Oil Producing Co., Tex.Civ.App., 110 S.W.2d 953, syl. 2–5, error refused; Burkett v. Chestnutt, Tex.Civ.App., 212 S.W. 271.

In addition to the issue as to the boundaries of the Huber lease, the State as appellant asserts by Points 4 and 5 that the trial court erred in limiting the answer of Chisum, the surveyor, to several questions of which the following is illustrative: "Q. Did you follow the banks of the river as they existed at the time you made this survey? A. Yes." The trial court correctly limited the answer of the witness to "Yes" as this answer was fully responsive as to whether Chisum did, or did not, follow the banks of the Canadian river. Points 4 and 5 of the State of Texas are accordingly overruled.

It is noteworthy that the State owned the entire bed of the Canadian river as a navigable stream and it does not comport with reason that the State executed a lease and Huber accepted such lease for only a portion of the Canadian river bed leaving minor strips of land between Huber's leasehold interest and the banks of the Canadian river.

The trial court correctly fixed the South bank of the Canadian river at the gradient boundary line of the river and also correctly established this South bank as the North boundary line of Section 64, Block 46 H & TC Ry Co. Survey, Hutchinson County, Texas. The court also correctly adjudicated and confirmed the leasehold title of J. M. Huber Corporation as being in and to all of the Canadian river bed as it now exists on the ground between an extension of the east and west lines of the said Section 64, Block 46, H & TC Ry. Co. Survey.

All points of error presented by Johnson and the State of Texas are overruled, and the judgment of the trial court is affirmed.