Kenneth L. ALLEN, Appellant,

v.

Charles MORALES and Buddy Seay, Appellees.

No. 2–83–073–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 16, 1984.

Kerry & Harrison, Henry E. Kerry and Stephen D. Harrison, Fort Worth, for appellant.

Camp, Jones, O'Neill & Hall, Daniel L. Bates, Fort Worth, for Buddy Seay.

Charles Morales, pro se.

Before JORDAN, BURDOCK and HILL, JJ.

## OPINION

BURDOCK, Justice.

This case involves a dispute as to ownership of a strip of land situated in Tarrant County, Texas. The court, sitting without a jury, rendered judgment for appellees.

We affirm.

At one time, appellant's and Morales' properties were one tract of land, divided by the Trinity River. In 1977, the portion of the tract south of the Trinity River was sold to two men, Friend and Cink. The property description in their deed reads as follows:

THENCE ... to a point on the South or right bank of the West Fork of the Trinity River; THENCE with the Southerly and Westerly, or right bank of the West Fork of the Trinity River as follows: [list of calls for course and distance]

In 1978, Friend and Cink conveyed this property to Morales. The property description in this deed was identical to the 1977 deed set forth above.

Appellant acquired that part of the tract situated north of the Trinity River in 1979. His property description is as follows:

THENCE South ... to the Northeast corner of that certain tract conveyed to Michael R. Friend and Dan R. Cink ..., said point being on the South or right bank of the West Fork of the Trinity River;

THENCE upstream along the right bank of the West Fork of the Trinity River and with the Northerly line of said Friend and Cink Tract, the following courses and distances:

[list of calls for course and distance]

Appellant brought suit against Morales and appellee Seay, an excavation contractor with whom Morales contracted to remove and sell topsoil from his property. It is appellant's contention that the boundary line between his property and that of Morales' is not the river, but a line established just south of the river by the calls for course and distance. As a result, appellant alleges ownership of approximately nine acres south of the river. It is upon this nine acres (hereinafter referred to as the "disputed area") that the excavation occurred. Appellant sued to establish his ownership to this "disputed area" and, in addition, to recover damages caused by the excavation. The trial court, sitting without a jury, held that the river was the boundary; that appellant did not own any of the "disputed area" and, therefore, was not entitled to any damages.

On appeal, the key issue is whether the river or the line just south of the river is the boundary. In this regard, appellant's points of error one and two are as follows:

(1) The District Court erred in holding, as a matter of law, that the Appellant's south boundary line, and Appellees' north boundary line, is the right bank of the West Fork of the Trinity River; and

(2) The District Court erred in holding, as a matter of law, that Appellants [sic] did not own at any time the land designated as the "disputed area ..."

■ It is a rule of general acceptation that meander lines of surveys of land adjacent to or bounding upon a stream are not to be considered as boundaries, but they are to follow the general course of the stream, which in itself constitutes the real boundary. *Stover v. Gilbert*, 112 Tex. 429, 247 S.W. 841, 843 (Tex.Comm'n App.1923, opinion adopted).[1] As the Court explained in *Stover, supra:*

1. *See also Oklahoma v. Texas*, 268 U.S. 252, 45 S.Ct. 497, 69 L.Ed. 937 (1925); *Galveston v. Tankersley*, 39 Tex. 651, 652, 659 (1873) ("[I]f he [the surveyor] had not intended to make the survey follow the river, he would have run a straight line from one corner to the other. There can be no object for so many angles unless it was upon the supposition that they would follow the meanders of the river."); *Thomas Jordan, Inc. v. Skelly Oil Company*, 296 S.W.2d 279, 290 (Tex.Civ.App.—Texarkana 1956, writ ref'd n.r.e.) ("[W]hen the surveyor points out to the owner rivers, lakes, creeks, marked trees, and lines on the land, for the lines and corners of his land, he has the right to rely upon them as the best evidence of his true boundaries, for they are not liable to change and the fluctuations of time, to accident or mistake, like calls for course and distance; and hence the rule, that when course and distance, or either of

'In surveying land adjacent to a stream, whether navigable or not, lines are often run from one point to another along or near the bank or margin of the stream, in such a manner as to leave a quantity of land lying between these lines and the thread or bank of the stream. These are called meander lines, and they are not the boundaries of the tract, but they merely define the sinuosities of the stream which constitute the boundary, ...'

To put it a little differently:

'The general rule adopted by both state and federal courts is that meander lines are not run as boundaries of the tract surveyed, but for the purpose of defining the sinuosities of the banks of the stream or other body of water, and as a means of ascertaining the quantity of land embraced in the survey. The stream, or other body of water, and not the meander line as actually run on the ground, is the boundary, the purpose of meander lines being merely for the benefit of the government in ascertaining the quantity of land in the survey for which it requires payment.'

*Stover, supra.*

■ The situation before us is similar to that presented in *Stover v. Gilbert, supra.* There, the field notes, which were later incorporated into the patent, are as follows:

Beginning ... on the N.E. bank of Brazos River ... *Thence down the river* the following courses and distances ... [Emphasis added].

Holding that the call "down the river" means with the river and that this will control over the calls for course and distance, the Court stated: "It is conclusive to our minds that the calls in the field notes of the [survey] establish the Brazos river as its eastern boundary, ..." *Stover, supra*, at 433. Therefore, in the case before us, the call in appellant's deed, "Thence

them, conflict with natural or artificial objects called for, they must yield to such objects, as being more certain and reliable."); *Johnson v. Phillips Petroleum Co.*, 257 S.W.2d 813 (Tex.Civ.App.—Amarillo 1953, no writ); *McCombs v.*

upstream along the right bank of the West Fork of the Trinity River," means up the natural course of the river and cannot be disregarded without a clear showing that the river was not intended as the boundary. *McCombs v. McKaughan*, 145 S.W.2d 194, 200 (Tex.Civ.App.—Beaumont 1946, writ ref'd); *Burkett v. Chestnutt*, 212 S.W. 271, 274 (Tex.Civ.App.—El Paso 1919, no writ).

Appellant contends the rule that "calls for natural objects govern calls for course and distance" is merely a rule of construction, which must yield when the intention of the parties is manifest. Further, appellant argues that the intention of the parties is considered to be essentially the same as that of the original surveyor. Here, appellant alleges the intent of the surveyor was that the survey line he (the surveyor) established just south of the river by the calls for course and distance was the property line. Therefore, the trial court erred in not following the "footsteps of the original surveyor."

■ We agree that all the various rules of construction which have, from time to time, been adopted and acted upon are designed for the purpose of arriving at, and carrying out, the intention of the contracting parties. *Swisher v. Grumbles*, 18 Tex. 164, 177 (1856). Where that is manifest, all else must yield to, and be governed by it. *Wheeler v. Stanolind Oil & Gas Co.*, 151 Tex. 418, 252 S.W.2d 149, 152 (1952); *Swisher, supra.* However, we disagree that, in this case, the intent of the parties is manifested by the "footsteps of the original surveyor."

Appellant cites several cases which follow the "footsteps of the original surveyor" rule, but all are distinguishable from the situation before us. None of the cases cited would apply the rule to establish a meander line as a boundary rather than the river.

*McKaughan*, 195 S.W.2d 194 (Tex.Civ.App.—Beaumont 1946, writ ref'd); *State v. Atlantic Oil Producing Co.*, 110 S.W.2d 953 (Tex.Civ.App.—Austin 1937, writ ref'd).

Further, appellant places much emphasis upon the fact that when the property was resurveyed in 1979, the surveyor set out iron rods marked with stakes and flagging along the line just south of the river. At trial, the surveyor, who not only did the survey in 1979 but earlier ones in 1970 and 1977 as well, testified as follows:

Q. Is it the normal procedure in surveying to place any marks or stakes along the route that you're going?

A. Ordinarily. Generally along the water course it's generally not done.

Q. Was it done in this case?

A. It was done in this later survey, yes. We set iron rods in '79.

The record reveals that this 1979 survey was done at appellant's direction and completed in October of that year, one month after this lawsuit was filed. We find that these circumstances are not persuasive of the surveyor's intent. In our opinion, the intent of the parties is manifested here, not by the footsteps of the surveyor, but by the language in the deed itself.

It is well settled that the intent of the parties to a deed must be determined from the language used in the instrument itself. *Jupe v. City of Schertz*, 604 S.W.2d 405, 407 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.). Unless the deed is ambiguous, it is the duty of the Court to construe the deed within the four corners of the document. *Ulbricht v. Friedsam*, 159 Tex. 607, 325 S.W.2d 669, 673 (1959). The Court is not looking for the subjective intent of the parties; instead, it is the objective intent expressed or apparent in the writing which is sought. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525 (Tex.1982). However, the words used must be given the usual and normal meaning ascribed to them by ordinary persons in the same or a similar situation. *See Fox v. Thoreson*, 398 S.W.2d 88, 92 (Tex.1966). The deed before us is plain and clear. Given its usual and normal meaning, the language, "Thence upstream along the right bank of the West Fork of the Trinity River" can mean nothing other than what it says.

Appellant urges this court to abandon the rule that "calls to natural objects govern calls for course and distance." He reasons that, because of modern surveying techniques, an imaginary line on the ground is more reliable than, say a river. While there may be some merit to appellant's contention, we do not believe this to be the proper case in which to change the law, given that the language in the deed, "Thence upstream along the right bank ...," is so clear and unambiguous. Because there is no ambiguity, we hold the words in the deed are to be construed as a matter of law. *Maxfield v. Northwood Homes, Inc.*, 582 S.W.2d 588, 590 (Tex.Civ. App.—Dallas 1979, writ ref'd n.r.e.). Accordingly, appellant's first point of error is overruled.

In his second point of error, appellant contends the trial court erred in holding, as a matter of law, that he did not own at any time the land designated as the "disputed area." We have already established that the right bank of the west fork of the Trinity River is the boundary between appellant and Morales. The record reveals that the "disputed area" is located south of the river. Therefore, appellant did not own at any time the "disputed area." Appellant's second point of error is overruled.

Appellant's remaining points of error deal with the issue of damages. Because we have previously determined that appellant does not own any land south of the river and, further, that the record reveals that all excavation occurred upon land south of the river, appellant is not entitled to any damages and, therefore, it is unnecessary to consider his remaining points.

The judgment of the trial court is affirmed.