LUCY B. MILLS ET AL. v. SAMANTHA NEEDHAM ET AL.

Decided March 26, 1902.

State School Land—Void Railroad Location.

By virtue of a railroad land certificate the land in controversy was first surveyed as an alternate State school section in 1861, and was subsequently located under another and different claim and patented to plaintiff's grantor. After the issuance of such patent defendant purchased the land from the State as State school land. Held, that the location and patent under which plaintiffs claim conferred no title, since the Constitution of 1876 had prior thereto appropriated and set apart to the school fund the alternate sections of all railroad land grants, and the Act of February 3, 1883, had made this provision applicable to all such alternate sections surveyed for the school fund, whether the certificate was valid or invalid, and that judgment for the land was therefore properly rendered for defendants. Const., art. 7, sec. 2.

Error from Montgomery. Trial below before Hon. L. B. Hightower.

*West & Cochran,* for plaintiffs in error.

*Ball, Dean & Humphreys,* for defendants in error.

NEILL, ASSOCIATE JUSTICE.—This suit was originally instituted by S. De Cordova, as executor of the estate of Annie G. McKinney, against Samantha and William Needham and Ella B. and B. L. Walker, in the form of an action of trespass to try title to recover 1280 acres of land located by virtue of a certificate issued to the Day Land and Cattle Company.

After the institution of the suit, plaintiffs in error having acquired the title of De Cordova, executor, intervened and prosecuted the suit in their own names.

The defendants in error, Ella B. Walker and her husband B. L., answered by general demurrer, and specially that they were the owners of a specific 640 acres of the land, which they describe by metes and bounds, of the 1280-acre survey claimed by plaintiffs in error, and disclaim any interest in the remaining 640 acres.

As the Needhams do not complain of the judgment and are not par-

ties to this writ, it is unnecessary to state their pleadings or mention them further.

From a judgment in favor of the Walkers awarding the 640 acres claimed by them, this writ is prosecuted.

The facts in the case are undisputed and are as follows: On May 26, 1900, the 1280 acres sued for were by patent No. 276, volume 7, patented to the Day Land and Cattle Company, it having been located by virtue of certificate No. 139 issued to said company. Whatever title passed by the patent plaintiffs in error now have. The land patented to the company embraces section 10, located by virtue of the certificate issued to the Washington County Railroad Company on August 15, 1860. By virtue of this certificate the county surveyor of Montgomery County located the section and filed the field notes thereof and recorded the same in volume styled "railroad company's field notes," on July 25, 1861, in the county surveyor's office. On August 15, 1861, these field notes were filed in the General Land Office; and said section is classified as public school land, and was located in pursuance of the Act of January 30, 1854, recited in said certificate. Said section appears on the maps of the lands of Montgomery County, Texas, in use and recognized in the General Land Office of the State, and so appeared prior to the location of the Day Land and Cattle Company's survey under which plaintiffs in error claim. The certificate by which section 10 was located is as follows:

"GENERAL LAND OFFICE,
"AUSTIN, Texas, August 15, 1860.

"This is to certify that the Washington County Railroad Company have filed in this office a copy of a contract for the completion of said road, the same being 22 1-2 miles in length and the unfinished part under tract being eleven and a half (11 1-2) miles, in accordance with the second section of 'An Act to encourage the construction of railroads in Texas by donation of land.' Applied January 30, 1854.

"Therefore, any legally authorized surveyor with whom this and a corresponding certificate from the Treasurer of the State that the bond required by said section has been deposited in his office may be filed, is hereby authorized to survey for said Washington County Railroad Company upon any vacant, unappropriated and unreserved lands of the State of Texas, seven hundred and twenty (720) sections of 640 acres each, to be located, surveyed and divided between the State and the Company in the following manner, to wit:

"1. This and the Treasurer's certificate must be filed in the district surveyor's office with a particular description of the land applied for, and the surveyor must immediately furnish this office with a copy of the application.

"2. The surveys to be made in square sections of six hundred and forty acres each, unless prevented by previous entries or navigable streams.

"3.  No location shall be made unless at least two surveys connected with each other can be obtained.

"4.  The surveys must be delieanated on a map or maps to be deposited in the General Land Office with the field notes, after which the Commissioner will number the surveys in regular order from one up to the full number in the county or land district, and report the result to the surveyor, who will enter the same upon his map and records.   (The surveyor may, as a matter of convenience, number the survey temporarily in pencil on the map and field notes.)

"5.  The even numbers will be reserved to the State, and the odd numbers go to the company.   In counting the sections, a fraction of more than 320 acres will be regarded as a whole section, and two fractions of less than 320 acres will be counted as one section.

"In testimony whereof I hereto set my hand and affix the seal of the said office this 15th day of August, A. D., 1860.

[Seal]                              "FRANCIS M. WHITE, Commissioner.

"Note.—The certificate is to be returned to the General Land Office as other certificates are upon which surveys are made.   If only a part is located in one county and the company wishes to locate the ——."

The records of the General Land Office at Austin show that nearly all lands that were patented under location made for the Washington County Railroad Company were by virtue of separate certificates of 640 acres to be issued to said railroad company.

Defendant in error Ella B. Walker, prior to March 1, 1898, but subsequent to the issuance of the Day Land and Cattle Company's patent, upon which plaintiffs in error rely for title, in 1897 made application to the Commissioner of the General Land Office of Texas for the purchase of said State section No. 10, and on March 1, 1898, the section was duly awarded to her.   In pursuance of her application and award, Ella B. Walker has continued to pay all installments of principal and interest as the same accrued in accordance with the regulations and rules made by the Commissioner of the General Land Office under the law.

The Act of February 2, 1856, incorporating the Washington County Railroad Company (Gammell's Laws, volume 4, page 351), provides: "That this company shall be subject to the provisions and be entitled to the benefits of any general laws which have been or may be enacted by the State regulating or encouraging the building of railroads."

*Opinion.*—Section 2, article 7, of the Constitution of 1876 sets apart and appropriates for the support of public schools "all alternate sections of land reserved by the State out of grants heretofore made or that may hereafter be made to railroads or other corporations of any nature whatsoever."

Section 1 of the Act of February 3, 1883, is as follows:   "Be it en-

acted by the Legislature of the State of Texas: That any and all public lands heretofore surveyed by railroads or corporations, or any company, or any person in this State, for the benefit of the public free schools of this State, by virtue of any certificate, valid or invalid, void or voidable, be and the same are hereby declared to be lands belonging to the public free schools of this State."

It is contended by the plaintiffs in error under their first assignment that there was at no time any authority in law to issue a land certificate to the Washington County Railroad, and hence any location or survey purporting to have been made for the benefit of the State by virtue of a certificate issued to the Washington County Railroad Company was void. In view of the constitutional and legislative provisions above quoted, we deem it unnecessary to pass upon the correctness of this contention or the propositions under the assignment in which it is asserted. The land embraced in section 10 was, prior to and subsequent to its location and survey by virtue of the certificate, the property of the State of Texas, whose title to it did not depend upon the validity of the certificate by virtue of which it was located and severed from the public domain of Texas. When by the location and survey it was separated from the unappropriated public lands, it was perforce of the Constitution set apart and appropriated for the support of public schools, and when so appropriated it was consecrated to such use and could not by any officer of the State or its Legislature be diverted therefrom. It was in obedience to this constitutional provision that the Legislature declared it to belong to the public free schools of this State when surveyed therefor by the railroad "by virtue of any certificate, valid or invalid, void or voidable." The certificate was either valid or invalid, void or voidable. In either event, whatever may have been its effect upon the railroad survey, the location of the alternate State section became land of the public free schools of the State. Though it may be of interest to parties claiming the railroad sections issued by certificates to the Washington County Railroad Company to know whether such certificates were valid or invalid, void or voidable, in this case it is immaterial, and a matter of no moment whatever. The section involved having been surveyed and located by virtue of the certificate, and being the property of the public schools, it in effect became "titled lands" within the purview of section 2, article 14 of the Constitution, and was held in trust by the State for the purpose for which it was "set apart and appropriated," and could only "be sold under such regulations, at such times, and on such terms as might be prescribed by law." Sec. 4, art. 7, Const. of 1876. Therefore the patent under which plaintiffs in error claim, having been issued upon location and survey made subsequent to the appropriation of the land for the support of public schools, is violative of the trust of the State, in derogation of its laws and Constitution, illegal and void as to the section of land in controversy. No title whatever having been conferred by the patent to the Day and

Cattle Company, none could pass from it to plaintiffs in error, and the land having been sold to Mrs. Walker, one of the defendants in error, as school lands "under such regulations, at such times, and on such terms as are prescribed by law," she has the superior title, and can not be ousted of her possession by plaintiffs in error, who have no title whatever to the land in controversy.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.