McCOMBS ét ux. v. McKAUGHAN et al.

No. 4351.

Court of Civil Appeals of Texas. Beaumont.
April 18, 1946.

Rehearing Denied June 5, 1946.

E. W. Love, of Cleveland, and James E. Faulkner, of Coldspring, for appellants.

Merrill & Scott, of Houston, and Grover Sellers, Atty. Gen., for appellees.

COE, Chief Justice.

The appellee, McKaughan, instituted suit in the district court of San Jacinto county against the appellant, J. S. McCombs, in trespass to try title for the recovery of the title to and possession of a tract of 597.61 acres of land on the Trinity river in San Jacinto county under allegations showing its purchase by him from the State of Texas under and by virtue of proceedings had in accordance with the provisions of the Act of the 46th Legislature, approved June 19, 1939, V.S.C.S. Art. 5421c, Sec. 6. The State of Texas became a party to the suit as an intervening plaintiff on the theory that appellee McKaughan as the purchaser from the state was entitled to possession of the land sold him before he could be required to make payment of the unpaid part of the purchase price thereof and for the protection of its rights under the award, including its reserved 1/16th mineral royalty. The appellant, Mrs. Lucy McCombs, became a party defendant in the suit by joining in the pleading filed by her husband, J. S. McCombs.

The trial was before the court without the intervention of a jury and judgment was rendered in favor of the appellee McKaughan for the land and in favor of the State making the recovery by the appellee McKaughan subject to the terms and conditions of the sale and award of the land to him by the Commissioner of the General Land Office, including the obligation to pay the unpaid portion of the purchase price and subject to the reservation to the State of the fee mineral royalty provided by law.

The petition of the appellee, McKaughan, in addition to the usual allegations in an

action of trespass to try title, first alleged himself to be entitled to proceed under the Act approved in 1939 by reason of the fact that he was the owner of adjacent and contiguous lands; and then he pleaded in detail a full and complete compliance with all the terms and provisions of that Act, the finding and determination of the Commissioner of the General Land Office that the land was in fact a vacancy within the meaning of the law; the failure of the appellant McCombs to assert his rights as a good faith claimant, and the subsequent sale and award of the land to appellee. The appellants by their answer pleaded in addition to the general denial that the land in controversy was not in fact vacant within the meaning of the Act approved June 19, 1939, but was a part of the Mesina Brown one-fourth league which had been granted by the State of Coahuila and Texas to Mesina Brown in 1835, and that the Commissioner was without authority to hold said lands to be vacant because the prior grant thereof was fully disclosed by the records of his office; that plaintiff was not entitled to recover because of the previous judgment rendered on September 18, 1940, in a suit between the appellant, J. S. McCombs, and the appellee, L. D. McKaughan, being numbered 4395 on the docket of the district court of San Jacinto county, and that Mesina Brown and her heirs and assigns, including appellants, had held and occupied and claimed the land for more than 110 years. The State of Texas, acting through its Attorney General, filed its intervention in which it pleaded substantially the same facts as were alleged and relied upon by the appellee McKaughan in his original petition. The State further alleged that the appellant, J. S. McCombs, was estopped and precluded from claiming that no vacancy in fact existed by his conduct in participating in the hearing before the Commissioner of the General Land Office, and there asserting facts which authorized him to claim the valuable possession of a good faith claimant and then failing either to assert his rights as such good faith claimant or to appeal from or otherwise challenge by judicial proceedings the findings and conclusion of the Commissioner that the land was in fact vacant.

Both the plaintiff in his petition and the State of Texas in its intervention pleaded the terms and provisions of Article 5329, subdivision 4, R.C.S., commonly referred to as the one year statute of limitation. By supplemental petition the appellants pleaded title under the 3, 5 and 10 years statute of limitation.

By his first supplemental petition the appellee McKaughan pleaded in detail his answer to the contention of the appellants that the issue of vacancy had been previously judicially determined in said cause No. 4395, and asserted his further contention that the appellant J. S. McCombs was estopped, barred and precluded from claiming or asserting that the lands involved were not in fact vacant within the meaning of the Act of June 19, 1939, on each of the grounds asserted by the State of Texas in its petition of intervention. The pertinent facts will be given in connection with the several points discussed.

By appellants' first three points, they complain of the failure of the trial court to hold as a matter of law that the land in controversy was a part of and included within the boundaries of a survey of one-fourth league granted to Mesina Brown by the State of Coahuila and Texas on November 2, 1835. The original field notes of said one-fourth league described the same as follows:

(English translation.)

"Survey for Mesina Brown.

"Beginning on N. line of a survey for Drury McGee for the 1st corner from which a post oak 14 in. dia bears N 24 deg 30 min E. 3 vs and a Black gum 12 in dia bears N 25 W 9 vrs.

"Thence N 41 deg. E with said line 4869 3/10 vrs to the river Trinity made 2nd corner.

"Thence down said river as follows (I suppose up) N 44 deg. W 500 vrs N 30 W 250 vrs N 24 W 320 vrs. N 16 W 190 vrs. N 87 5/10 vrs 3rd corner from which a cotton wood 18 in. dia. bears S 60· W 8 vrs. and a black gum 24 in. dia. bears S 18 E. 9 vrs.—Thence S 41 W 5290 5/10 varas 4th corner from which a pine 20 in. dia bears N 16 E. 3 vrs. and a black oak S 40 W 8 2/10 vs.

"Thence S 49 E 1252 vrs. to beginning containing one fourth of a league."

The field notes in the original grant are substantially the same, and are as follows:

"The lands surveyed for Mesina Brown are found to be as follows: The first is situated on the Trinity River adjoining a survey made for Drury McKee; the first land *make,* was formed on the north line of said McKee's from which a white oak 14 inches in diameter bears N 23 deg. 20'E. 3 varas distant and·a black gum 12 inches in diameter bears N 25 deg.·W. 9 varas distant. Thence N 41 deg. E with said line 4869 3/10 varas to the Trinity River where the second land mark was formed. Thence ascending said river as follows N 44 deg W. 500 varas; N 30 deg. W 250 varas; N 24 deg W 320 varas; N 16 deg. W 190 varas; North 87 5/10 varas to the 3rd. land mark; from which a cottonwood 18 inches in diameter bears N 60 deg. W. 6 varas distant and a black gum 24 inches in diameter bears S 18 deg. E. 9 varas distant. Thence South 41 deg. West 5290 5/10 varas to the 4th land mark; from which a pine 20 inches in diameter bears.

Third Seal

(L. S.) For the Biennial Term of 1834 and Two Reals 1835.

N 16 deg. E 3 varas distant and a black oak 20 inches in diameter bears South 40 deg. W 8 2/10 varas distant. Thence South 49 deg. East 1252 varas to the place of beginning and completing a quarter league of land, one labor of which belongs to the class of arable land and the remainder to that of pasture land. And as sufficient vacant land to complete the league was not found, the three quarters of a league was surveyed as follows: * * *."

J. S. Ross, County Surveyor of San Jacinto county, who had been such surveyor for thirty years, testified before the Commissioner of the General Land Office in a hearing for the purpose of establishing the land here in controversy as being vacant and unappropriated school lands, and all of such testimony as given before such Commissioner was offered in the trial of this case. He also testified in the trial of this case. In such testimony Mr. Ross goes into detail as to the manner he located the Mesina Brown one-fourth league on the ground. It appears from his testimony that none of the bearing trees called for in the original field notes of Mesina Brown's one-fourth league are now in existence and that he was compelled to rely on certain corners established in making a partition of said land between the heirs of Mesina Brown by the probate court of San Jacinto county, Texas, in 1883, wherein the one-fourth league and the adjoining three-fourths ·league granted to Mesina Brown on the same date was partitioned between her heirs; that having fixed his beginning point on the northwest line of the Drury McKee league by course and distance from the established corner of one of the tracts run off in making the sub-division above referred to, he then proceeded to locate the said one-fourth league by running the course and distance called for in the original field notes and found that same included the full acreage for one-fourth league by using the meander line on the northeast of said tract as the' boundary line, thereby leaving between such line and the Trinity river 597.61 acres of land.

The question presented to the trial court from all the evidence was whether the northeast boundary of the Mesina Brown one-fourth league as originally surveyed was the Trinity river or whether such lines are to be located by the calls for course and distance as contained in the field notes. Appellants take the position that the original field notes called for this line to follow the meanders of the river and rely upon the general rule that in construing field notes the courts will give precedence to calls for natural objects over those for course and distance. The appellees take the position that this general rule does not control in the case at bar, contending that the field note calls relied upon do not show that the original surveyor was attempting to meander the river between two survey corners located on the bank of that stream, and second, because if such attempt was being made the evidence clearly shows that the meander line was based upon a materially erroneous conjecture as to the location of the river, except as to the first call. The following

sketch of the northeastern portion of the Mesina Brown one-fourth league, while not drawn to scale, fairly represents the contention of the parties:

sketch, marked "old run of Trinity 1929." The trial court not having filed any findings of fact or conclusions of law, we must presume that he found such facts as were

The irregular line running from point "A" to point "B" represents the N.E. line of said one-fourth league as contended for by appellees. The Trinity river changed its course in 1929 as shown by the

necessary to support his judgment in favor of appellees, which would include the finding that the northeast boundary of the Mesina Brown one-fourth league is the line referred to as the meander line ex-

tending from the most easterly corner to the north corner of said survey. This implied finding by the trial court must stand unless the calls in the original field notes and grant fixes as a matter of law the Trinity river as the northeast boundary of said survey. The calls for course and distance, as contended for by appellees, places the northeast or north corner 2767 varas from the point on the river where the northwest line of the survey would have reached the river if extended. As this line was run by the surveyor Ross, there was no evidence of a marked line or established corners, but was located by said surveyor entirely upon the calls for course and distance in the original field notes of said survey. It will be noted from the foregoing sketch that immediately above the point where the southeast boundary line of the Mesina Brown one-fourth league intersects the river for its east corner, that the river turns sharply east, then almost south, and forms a very large bend, before it again comes back to its general course of northeast and southwest. The only evidence in the record, other than the field notes and patent calls, to support the court's finding that the northeast boundary of said survey is located as contended for by appellees is the fact that by so locating the same the Mesina Brown one-fourth league has its full complement of acreage and by adopting the Trinity river as the northeast boundary said survey would be excessive to the extent of 597.61 acres. It further appears that this acreage was never rendered for taxes until some three or four years ago, said survey having been rendered for taxes on the theory that it contained no excess acreage. To support the contention of appellants that the Trinity river is and was the northeast boundary of said survey, they offered in evidence a map from the General Land Office, of date 1879, which outlines the northeast boundary of said survey as being the Trinity river. According to this map the Trinity river is the northeast boundary of each and every survey of land which touches the river at any point entirely across the northeast portion of said county. Therefore, if the Trinity river be not the boundary of the survey in question, it is the only survey in the county which touches the Trinity river that does not have said river for its east or northeast boundary.

The facts here present a strikingly similar situation as was presented in the case of Stover v. Gilbert, 112 Tex. 429, 247 S.W. 841, in which an extensive excerpt from the case of Galveston County v. Tankersley, 39 Tex. 651, 658, was quoted. In that case the Supreme Court held as a matter of law that the Brazos river, which was called for in the field notes, was the east boundary line of the survey in question, notwithstanding the fact that the northeast corner of said survey as called for by the original surveyor was conclusively established and identified as being on a high hill about a quarter of a mile or farther from the Brazos river, said survey being established by extending a line from the established northeast corner in an easternly direction to the river, thence down the river to the southeast corner. It is a well established rule by both the Federal and State courts that meander lines are not run as boundaries of the tract surveyed but for the purpose of defining the sinuosities of the banks of the stream or other body of water, and as a means of ascertaining the quantity of land embraced in the survey, the stream or other body of water, and not the meander lines as actually run on the ground, is the boundary, the purpose of the meander lines being merely for the benefit of the Government in ascertaining the quantity of land in the survey for which it requires payment. 9 Corp.Juris. 189; 11 C.J.S., Boundaries, § 30. See also the many authorities cited in Stover v. Gilbert, supra. Appellees contend that since the meander line, when applied to the ground according to the course and distance, called for in the original field notes of the grant run almost directly away from the river after the first call (said first call running along or near the river bank), that it follows that the surveyor was not in fact attempting to meander the Trinity river and that if he was making such an attempt that the evidence clearly shows that the meander line was based upon a· materially erroneous conjecture as to the location of the river except as to the first

call. With this contention we are unable to agree. The call in the field notes and grant, "Thence ascending said river" means up the natural course of the river and can not be disregarded without a clear showing that the river was not intended as the boundary. Stover v. Gilbert supra; State of Oklahoma v. Texas, 268 Tex. 252. 45 S.Ct. 497, 69 L.Ed. 937. Again, if the original surveyor had intended for the northeast boundary of said survey to be a line actually run by him upon the ground, there would have been no occasion for running a line with so many angles instead of a straight line from the east to the north corner. The fact that there is considerable excess in the survey if the Trinity river is adopted as the northeast boundary is not sufficient cause to disregard the call to ascend the river from the east to the north corner of said survey. Thomas v. Cline, Tex.Civ.App., 135 S.W.2d 1018; State v. Balli, Tex.Sup., 190 S.W.2d 71. Under the foregoing facts, we hold, as a matter of law, the Trinity river is the northeast boundary of the Mesina Brown one-fourth league and that the land in controversy is a part of said survey.

■■ Appellants also contend that the trial court was in error in overruling their plea of res judicata and estoppel based on the appellants' judgment against the appellee, L. D. McKaughan for title to the same land in cause No. 4395, plead by appellants as above referred to. The record reveals that after the appellee McKaughan acquired title to a tract of 841 acres of the Mesina Brown one-fourth league, which tract had for its northeast boundary the irregular or meander line above referred to, a dispute arose between the appellants and appellee McKaughan as to the proper location of said line upon the ground, whereupon the appellant McCombs instituted suit against McKaughan in form of trespass to try title, alleging that McKaughan was trespassing on his property and erecting a fence thereon. Appellee McKaughan answered by general denial and plea of not guilty, and apparently made the contention that the appellant McCombs should not prevail in that suit for the reason that the lands lying between the meander or irregular line as established on the

ground and the Trinity river were vacant and unpatented lands, and, therefore, the appellant as plaintiff in that cause had failed to show title in himself and should not recover as against appellee. This contention was overruled by the trial court and judgment was entered in favor of appellant J. S. McCombs for all the land lying between said line as established on the ground and the Trinity river, which is the same land in controversy here. At the time this suit was filed and judgment rendered therein, the Commissioner of the General Land Office had then pending before him for determination under the Act approved June 19, 1939, the question of whether or not such vacancy in fact existed as plead by appellee McKaughan. The State of Texas was not a party to the suit referred to, neither did it have any notice thereof. The Commissioner of the General Land Office having found such land to be vacant, and having awarded same to appellee McKaughan in accordance with the provision of the Act of 1939, as plead by him, there was no question of res judicata or estoppel presented. Res judicata or estoppel by judgment does not apply in suits in trespass to try title to any title that might be acquired by either party subsequent to the rendition of the judgment plead as res judicata or estoppel. See 26 Tex.Jur., Sec. 376, and cases there cited. Therefore, the judgment relied upon as res judicata and estoppel was no bar to the assertion by appellee McKaughan to any rights or title that he might have acquired to the land in controversy under the award made to him by the Commissioner of the General Land Office.

■ Appellees contend that even though the land in controversy might be included within the boundaries of the Mesina Brown one-fourth league, and therefore a part thereof, that the appellants are barred and precluded, and were at the time of the trial of this cause, from questioning the correctness of the findings and conclusions of the Commissioner of the General Land Office, holding the land in controversy to be unsurveyed school lands belonging to the State of Texas, by reason of the terms and provisions of Article 5329, subdivision 4, Revised Civil Statutes, sometimes re-

ferred to as the one year statute of limitation, and that they are barred and precluded from questioning the correctness of such findings and conclusions by the Commissioner of the General Land Office by their conduct in participating as good faith claimants in the hearing before that officer and then failing either to assert their rights as such within the time prescribed by law or to appeal from such findings and conclusions to a court of competent jurisdiction. The record shows without controversy that following the filing by the appellee McKaughan of his application all of the steps necessary to the award of the land by the Commissioner of the General Land Office were duly and regularly taken, that appellant, J. S. McCombs, appeared in person and by attorney before the Commissioner of the General Land Office upon a hearing of appellee McKaughan's application, and was given proper notices of all proceedings had in connection therewith. As a result of the proceedings before the Commissioner of the General Land Office, he awarded the land in question to appellee McKaughan on January 18, 1943, and on February 20, 1943, a corrected award was made, and in accordance with his application to purchase said land appellee McKaughan paid one-fifth of the purchase price on October 20, 1942, after the price thereof had been fixed by the school land board, the lands being awarded to appellee McKaughan without condition of settlement. That portion of the statute relied upon by appellees, sometimes called the one year's statute of limitation, is a part of Section 4, Article 5329, Revised Civil Statutes, and is as follows: "No sale made without condition of settlement shall be questioned by the state or any person after one year from the date of such sale." We can not agree with appellees that the statute referred to has any application to a suit of trespass to try title, as is here presented.

It is our opinion that such statute applies only to procedural matters before the Commissioner of the General Land Office upon which awards are made and can not be made to apply so as to extinguish a valid title outstanding in a third person as opposed to the supposed title awarded by the state. Callahan v. Bascom Giles, Com'r Gen. Land Office et al., 137 Tex. 571, 155 S.W.2d 793. If in truth and in fact the land here in controversy is a part of the Mesina Brown one-fourth league as granted her on November 2, 1835, which we hold it to be, then no title passed under the award from the Commissioner of the General Land Office to the appellee McKaughan for the simple reason the State had no title to convey. The appellant McCombs was in possession of the land in controversy and had been for many years, having the same under fence for some thirty or forty years, and there was no occasion for an attack by him upon the award to McKaughan until such time as an effort was made to oust him of such possession by force of the award. Being of the opinion that the land in controversy as a matter of law is included within the boundary, and is therefore a part of the Mesina Brown one-fourth league, and that the one year statute of limitation referred to has no application, and that the appellants are not estopped from questioning the effect of the award because of having participated in the proceedings before the Commissioner of the General Land Office, and not appealing therefrom to a court of competent jurisdiction, it follows that we are of the opinion that the trial court should have entered judgment to the effect that the appellees take nothing as against the appellants J. S. McCombs and wife. We therefore reverse the judgment of the trial court as rendered herein and render judgment to the effect that the appellees take nothing as against appellants.