The STATE of Texas, Appellant,

v.

C. Roy DAVIS et al., Appellees,

No. 14145.

Court of Civil Appeals of Texas.

Houston.

May 23, 1963.

Rehearing Denied June 13, 1963.

(Will Wilson was Atty. Gen., when appellant's brief was filed, Waggoner Carr was Atty. Gen., when the case was submitted) Ben M. Harrison, Joe A. Osborn, J. S. Bracewell, Asst. Attys. Gen., Austin, for appellant.

Newman & Montgomery, George Newman, Waco, for appellees.

COLEMAN, Justice.

This suit, a formal trespass-to-try title action, was brought by appellees against the State of Texas for the purpose of quieting title to a mineral interest in certain land located in Matagorda County and to recover royalties previously paid to the State.

Both the State and appellees filed motions for summary judgment. Appellees' motion was granted and this appeal resulted.

In answer to appellees' petition, the State of Texas filed a general denial, a plea of not guilty, a plea setting up the one year statute of limitation (Sec. 4, Art. 5329, Vernon's Ann.Civ.St.Tex.), and a plea specifically alleging title to a ⅛ royalty interest in all sulphur, and a ⅟₁₆ royalty interest in all other minerals produced from the land described, by reason of a reservation in the patent to the land issued by the State to appellees' predecessor in title in 1952.

In their motion for summary judgment appellees alleged superior title to the land by and through a regular and continuous chain of title from the original Peter W. Grayson Grant from the State of Coahuila and the Republic of Texas in 1831, and from the original John Smith One-Third League Grant, George Sutherland, assignee, by virtue of headright certificate No. 983, issued by the Board of Land Commissioners of Harrisburg County, Texas, on October 11, 1839. Appellees contend that they did not base their claim of title to the land on the patent issued to Mabel Ann Davis, Independent Executrix of the Estate of W. G. Davis, deceased, issued on March 26, 1952, pursuant to application and obligation to purchase school land without settlement dated August 5, 1940, and a subsequent award by the Commissioner of the General Land Office on August 5, 1940, to the Estate of W. G. Davis, deceased. Appellees deraign their title to the land from Mabel Ann Davis, who was the wife of W. G. Davis.

The 1952 patent was issued by the Commissioner of the General Land Office pursuant to the terms of the 1931 Vacancy Act. Acts 42nd Leg., R.S., 1931, Ch. 271, p. 452; Codified as Art. 5421c, V.C.S. Appellees contended that title to the land de-

scribed had passed out of the State by the patents of 1831 and 1839; that since the State had no title to the land described in the patent of 1952 the patent conveyed nothing and the mineral reservation contained in the patent could not be effective to reserve to the State minerals which the State did not own. They further contended that there could be no question of fact as to the location of the boundaries of the land conveyed by the patents of 1831 and 1839, or of the existence of the vacancy constituting the basis for the patent of 1951, because these questions had been determined in a trespass-to-try title suit in 1906 in the District Court of Jackson County, Texas, Cause No. 800, styled George E. Williamson v. G. H. Newnom et al. It is their contention that although the State of Texas was not a party to this suit, it is bound by the doctrine of Stare Decisis since the case was affirmed by the Court of Civil Appeals, and by the Supreme Court of Texas. The case on appeal is reported as Newnom v. Williamson, 46 Tex.Civ.App. 615, 103 S.W. 656, aff'd Newnom v. Neill, 101 Tex. 42, 104 S.W. 1040. It appears from the opinion of the Court of Civil Appeals that the affirmance was based on a presumption that, in the absence of a complete statement of facts, the evidence adduced upon the trial supported the judgment of the trial court. The action taken by the Supreme Court cannot be construed as an affirmance of the judgment of the trial court or the Court of Civil Appeals, since their action was on an application for writ of mandamus, which was refused for want of jurisdiction.

In the Newnom case appellant assigned as error the action of the trial court in directing the jury to return a verdict for appellee for the reason that the verdict directed was not supported by the evidence and was contrary to the undisputed evidence. In effect the Court of Civil Appeals held that such assigned errors could not be sustained in the absence of a complete statement of facts.

In the case of Horne v. Moody, 146 S.W. 2d 505, the San Antonio Court of Civil Appeals said:

"As we understand the rule of stare decisis in this State it is one of precedent and authority. It is based upon the statement of a principle, rule or proposition of law by the Supreme Court or the highest court in the State having jurisdiction of the particular case. In a boundary suit the adoption of a particular legal proposition, such as a rule of construction, generally results in a judgment establishing a certain boundary. The doctrine of stare decisis, however, is based upon the legal principle or rule involved and not upon the judgment which results therefrom. In this particular stare decisis differs from res judicata, which is based upon the judgment."

The court in the Newnom case adopted no statement of a principle, rule or proposition of law determinative of the location of the boundaries of the lands involved in that suit or in this litigation, nor did that court lay down any proposition of law which would negative the existence of the claimed vacancy on which the patent of 1951 was granted. These questions, which would be controlling in this suit, were not considered by the appellate courts.

The doctrine of stare decisis cannot properly be invoked in support of the summary judgment rendered by the trial court. Rogge v. Gulf Oil Corporation, Tex.Civ. App., 351 S.W.2d 565. Appellees, therefore, have not conclusively negatived the existence of issues of fact.

■ Appellant's principal contention in support of its motion for summary judgment is stated in its brief as follows:

"Determination of the case involves the question of whether subject tract of land was vacant, unsurveyed land in 1940. The key issue in the case is whether or not appellees can now ques-

tion appellant's contention that subject tract of land was a vacancy in 1940, when appellee's father and predecessor in title, W. G. Davis, represented to appellant in 1939 that the land was a vacancy within the enclosure of his adjacent patented lands and requested the Commissioner of the General Land Office to so find on the basis of a survey which Davis had requested and when pursuant to the 1931 Vacancy Act, the Commissioner had found subject tract to be a vacancy and awarded the tract to the W. G. Davis estate in 1940 and issued a patent to the widow of W. G. Davis, mother and predecessor in title of appellees, in 1952. This patent contains the mineral reservation which is in issue in this case.

"The material and undisputed facts concerning the application and award of subject land to appellee's father and mother will be reviewed below.

"The 1931 Vacancy Act [Acts 42nd Leg., R.S., 1931, ch. 271, p. 452; Codified as Article 5421c, Vernon Civil Statutes] provided for the sale of vacancies as follows, in Section 6:

" 'Any one desiring to buy any of the unsurveyed land included in this Act not situated within five miles of a producing oil or gas well shall file with the county surveyor of the county in which the land may be situated, an application for survey describing the land in such manner as will enable the surveyor to identify it and pay the surveyor a fee of one dollar ($1) for filing and recording said application and also deposit with him such sum of money as will pay for citing the claimant or claimants of the land, if any, and the adjoining owners as the tax rolls may disclose the names of such claimants or adjoining owners. The surveyor using the forms prescribed by the General Land Office, shall immediately send by registered mail or hand to each claimant or adjoining owner a citation containing a description of the land sought to be surveyed and fix a date for survey. The survey shall be made and the field notes filed in the Land Office within one hundred and twenty (120) days from the filing of the application with the surveyor. If the area is found by the Commissioner to be unsurveyed and subject to sale, he shall value the land and give notice of the valuation to the applicant who may purchase the land on the same terms and conditions as prescribed by the law and the regulations for the sale of surveyed land; provided, if the area should be in the enclosure of another person claiming it in good faith, or occupied as a home by another, such holder or occupant shall have a preference right for a period of sixty (60) days after service of citation to have the land surveyed on his own application to the surveyor and on the return of the sum advanced by the first applicant for citation, and thereupon fix his right to purchase as herein provided, * * *'

"On October 14, 1938, W. G. Davis filed his application for survey to purchase subject tract pursuant to the 1931 Vacancy Act in the records of the Matagorda County Surveyor and on February 11, 1939, the same application was duly filed in the General Land Office. In this application W. G. Davis stated:

" 'I hereby apply for a survey of the following described area believed to be unsurveyed land belonging to the public free school fund, with a view to the purchase of the same under said Act (1931 Vacancy Act).'

"Pursuant to the provisions of the 1931 Vacancy Act and the duly filed request of W. G. Davis, the described tract of land was surveyed and the field notes of the survey were filed with the

County Surveyor of Matagorda County. These are the field notes of the tract later patented in 1952 and is the same tract of land at issue in this case. A copy of these field notes was then duly filed with the General Land Office on February 11, 1939. This tract of land based on this survey was designated and thereafter referred to by the General Land Office as SF 14109.

"Pursuant to the 1931 Vacancy Act, the Commissioner of the General Land Office made his fact finding in which he found SF 14109 to be unsurveyed school land. The Commissioner then approved the application for survey and the field notes filed by W. G. Davis and duly classified and valued the land. On July 3, 1940, the Commissioner notified W. G. Davis of his findings and of his approval of the application for survey and the field notes and sent Davis an application to purchase the land.

"By virtue of the 1931 Vacancy Act, since W. G. Davis represented the land as being within his enclosure he had a 60-day preference right to purchase the land over any other applicant.

"On August 5, 1940, W. G. Davis, through his widow, Mabel Ann Davis, acting in her capacity as independent executrix of the estate of W. G. Davis, filed in the General Land Office an application to purchase SF 14109 for $3.00 per acre. The terms of the purchase were a ⅟₄₀ down payment, with the balance to be paid over a forty year period at 5% interest. The down payment of $11.23 was enclosed with the application. In his application W. G. Davis, acting through his independent executrix, stated:

"'I hereby apply to purchase the following land under the provisions of the laws relating to the sale of school land without settlement and with a reservation of ⅛ of the sulphur and ⅟₁₆ of all the other minerals as a free royalty to the State.'

"And further stating:

"'I agree that the sale to me is upon the express conditions of a reservation of ⅛ of the sulphur and one sixteenth (⅟₁₆) of all other minerals as a free royalty to the State. I herewith enclose the sum of $11.23 as the one-fortieth cash payment therefor, * * *' ·

"In this application, said applicant further executed a note for the balance of the purchase price in the amount of $437.87. And finally, in the application, W. G. Davis, acting through his widow as independent executrix, certified as follows:

"'And it is expressly understood that I am to comply strictly with all the conditions, limitations and requirements, and am subject to and accept all the benefits and penalties contained and prescribed in the above recited Acts.' (Referring to the 1931 Vacancy Act)

"On August 5, 1940, the Commissioner of the General Land Office duly awarded SF 14109 to the W. G. Davis Estate pursuant to his approval of the application for survey and field notes and the application to purchase which had previously been filed.

"On March 26, 1952, SF 14109 was duly patented to 'Mabel Ann Davis, Independent Executrix of the Estate of W. G. Davis, Deceased, and her heirs or assigns.' The patent shows on its face that it was issued on the application of the Davis Estate pursuant to the 1931 Vacancy Act. The patent expressly reserves the ⅛ free royalty interest in sulphur and the ⅟₁₆ free royalty interest in all other minerals which is the subject of this suit. This patent was then duly recorded in the deed records of Matagorda County with the notation on the back of the patent, 'Ret. to Mrs. Mabel Davis, 930 N. Fourth Ave., Tucson, Arizona.' "

In 1938 an application to purchase this land as unsurveyed public school land filed by L. F. Brothers was denied by the Land Commissioner on the ground that there was no vacancy. After having filed her application to purchase Mrs. Mabel L. Davis wrote a letter to the Commissioner in which she stated:

"I still think there is no vacancy on this land. Neither did Mr. Davis think there was. He filed on it simply to be ahead of any unscrupulous person who would file on it, and I filed for the same reason. If, despite all the reasons we had for believing no vacancy existed there, one was declared and it was open for filing, quite naturally we wanted to be the ones to buy the land back, and did not wish a slice out of our farm to fall into the hands of anyone else. Especially the ones who were trying to get it, and who, we knew, would go to any length to obtain it. * * *"

The application of W. G. Davis was approved and the award made on the day before the deadline for awards on applications filed under the 1931 Act. The Vacancy Act as amended in 1939 (Acts 1939, 46th Leg., p. 465), and presently in effect (Art. 5421c, V.A.T.S.), provides for the reservation to the State of ⅛ of all minerals where a vacancy is within five miles of a producing oil well, and, in addition, contains a provision whereby an applicant, filing prior to the time that a good faith claimant might file, would receive a ¹⁄₁₆ free royalty even though the land might be awarded to the good faith claimant.

After the patent was issued to Mrs. Davis by the State, the land conveyed by the patent, together with the land in the Grayson and Smith Surveys, was pledged as security for a loan from the Federal Land Bank and oil and gas leases were negotiated. The deed from Mrs. Davis to her children, appellees herein, specifically included as "Second Tract" 149.8 acres known as "SF 14109 W. G. Davis Estate."

Appellant contends that since appellees have had the benefit of the protection that the award of SF 14109 gave them from other vacancy applicants for over twenty years until the royalty has become valuable, equity will not permit them to repudiate the actions and representations of their predecessor in title to escape the sole condition of the vacancy award, the reservation of royalty for the benefit of the Permanent School Fund. Appellant cites the general rule stated in 22 Tex.Jur.2d, Estoppel, § 1: "The broad concept of estoppel is that one who by his speech or conduct has induced another to act in a particular manner ought not to be permitted to adopt an inconsistent position, attitude, or course of conduct and thereby cause loss or injury to the other."

■ The doctrine of estoppel applies against those holding in privy of title from one against whom estoppel is asserted. 19 Am.Jur., Estoppel, Sec. 152; Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626.

In Waco Bridge Co. v. City of Waco, 85 Tex. 320, 20 S.W. 137, the Court said:

"Under these circumstances, the mere fact that the plaintiff failed to offer the deed in evidence, and that, in order to prevent the defendant from doing so, it disclaimed holding under it, was properly held by the court not to be a sufficient reason for excluding the deed. The deed clearly reserved and dedicated a street, as was contended by the city. If the plaintiff had accepted it and held under it, or if it was a link in its chain of title, it was bound by it. *Even if it was not a necessary link in its chain of title, if it acquired the title of those holding under it for the purpose of quieting its title, or removing clouds or conflicting claims, it must be held to have taken it with and become bound by its reservations.* * * * The plaintiff, it seems to us, failed to prove a legal or equitable title to the land, either with or without the introduction of this deed, but the use proposed to

be made of it by the defendant, and permitted by the court, *did not depend upon its effect in establishing plaintiff's title*. It was sufficient, for the purposes of this case, if it appeared that it was one of the sources under which the plaintiff claimed the land. * * *" (emphasis added)

The Waco Bridge Co. case was cited with approval by the Supreme Court of Texas in Greene v. White, 153 S.W.2d 575, where the Court held:

"While Alex Garrett did not sign the deed, he was a party to it as grantee, and further became a party to the deed and contract by executing the vendor's lien notes given as purchase money. The terms, provisions and obligations of the deed are in our opinion, subject to qualification as hereinafter made on account of the homestead question, binding upon both of the parties to it. The instrument is contractual in nature, representing and setting forth the agreement of the grantor and the grantee as to what the interests, rights and obligations of said parties shall thereafter be with respect to the land. It was executed in settlement of conflicting claims of the parties. Garrett was in possession of the land, claiming to have acquired a right or title to it by possession. The right or title claimed by him was not evidenced, however, by any formal or final determination of the sufficiency of his possession to give him a limitation title. The evidence in the record as to his possession up to that time is such that the question of its sufficiency was a question of fact, subject to determination either for or against him by a court or jury. Greene's claim of title to the land was also at that time subject to dispute and to the hazard of a decision of the facts against him. He had record title to the land through the deed from Huffhines, if the land was within the bounds of the Davenport survey, but the evidence does not conclusively show that it was so located. In this situation, the deed was executed, setting out the agreement of the parties that Garrett should pay to Greene a stated sum evidenced by notes, that thereafter the title to the surface should be in Garrett and the title to the minerals and merchantable timber in Greene, the latter warranting to defend the premises unto Garrett against all claims.

"The general rule is that the grantee in a deed accepted by him is a party to the deed, even though he does not sign it, and that he is concluded by recitals in the deed and by reservations contained therein in favor of the grantor. Martin v. Roberts, 57 Tex. 564, 568; Orbeck v. Alfei, Tex.Civ.App., 276 S.W. 947; 21 Corpus Juris, p. 1095, § 81; 19 Am.Jur., p. 627, Sec. 29, p. 624, Sec. 26. 'The obligations undertaken by the parties to a deed are binding contractually; and where the conveyance is by way of deed poll—that is, one executed by the grantor alone— obligations are enforceable against the grantee by virtue of his acceptance of the deed.' 16 Am.Jur., p. 645, Sec. 358. The recitals in the deed that the vendor's lien is retained to secure payment of notes executed by Garrett are contractual. Pridgen v. Furnish, Tex.Com. App., 23 S.W.2d 307. The recitals which give the surface estate to Garrett and reserve the mineral estate to Greene are likewise contractual. They define the character and extent of the ownership and interests of the parties in the land affected by the deed. Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825.

*     *     *     *     *     *

"It follows from the decision last discussed and the other authorities above cited that, since the parties to the Greene-Garrett deed are bound by the terms of their contract, it was not necessary, in order to make the reservation in the deed effective in favor of Greene and those holding under him

and against Garrett and those holding under him, that good title to the land be shown in Greene at the time when the deed was executed. The deed, as between the parties to it, having worked a severance of the mineral estate from the surface estate, such possession of the surface as was exercised by Garrett, and those claiming under him, after the execution of the deed was not adverse possession of the minerals. Elliott v. Nelson, 113 Tex. 62, 251 S.W. 501; Rio Bravo Oil Company v. McEntire, 128 Tex. 124, 136, 95 S.W.2d 381, 96 S.W. 2d 1110; Luse v. Boatman, Tex.Civ. App., 217 S.W. 1096, application for writ of error refused."

The decision in the Greene case was explained and followed in Adams v. Duncan, 147 Tex. 332, 215 S.W.2d 599, where the Court said:

"Since the Ford deed was not void, we think its effect is settled by Greene et al. v. White et al., 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626. Although they did not sign the deed, grantees Adams accepted it and subsequently used it to their advantage; so they and petitioners, their privies, were concluded by its recitals and by the reservations therein in favor of the Duncan estate and its heirs, the respondents. Moreover, the deed's recitals that it conveyed the surface estate and only one half the mineral estate and reserved one half the mineral estate to Ford and to the heirs and devisees of William Duncan, deceased, were contractual provisions that defined 'the character and extent of the ownership and interests' of both grantors and grantees in the land.

"It is true that this court said in Greene et al. v. White et al., supra, that if at the time the deed in question there was executed the grantees held title by limitation, the deed from grantors (reserving the mineral estate) was wholly ineffectual. But that holding was grounded on the theory that the land was the homestead of the grantees and, as a matter of course, the instrument could not deprive them of any interest therein if they already owned it whether by limitation or otherwise, since they did not sign and acknowledge it as the law requires in any conveyance of the homestead * * *.

"* * * Therefore, neither they nor petitioners as their heirs and successors in title can now be heard to say that they are not bound by its contractual obligations.

"And that disposes of petitioners' contention that they had acquired limitation through the possession of Burrell, their tenant, prior to 1906, as adjudged to them in the Burrell-Bilbo litigation above referred to, for which reason that 160 acres should be considered separately from the remainder of the Duncan Survey in this suit, in adjudicating their rights in the mineral estate. We see no merit in that contention. Whatever their title may have been and whatever its source prior to 1906, they contracted away one half the mineral estate in the whole survey by their acceptance of the Ford deed."

■ Unless the Davis patent is void, appellees are estopped to question the title of the State to the reserved mineral interest. Appellees contend that the patent is void by virtue of Sec. 2, Article 14, Constitution of Texas, which provides, in part: "* * * Provided, that all genuine land certificates heretofore or hereafter issued shall be located, surveyed or patented, only upon vacant and unappropriated public domain and not upon any land titled or equitably owned under color of title from the sovereignty of the State, * * *." It was early settled that this section applies only to the location of land certificates and does not affect lands purchased from the State. Sanborn v. Gunter & Munson, 84 Tex. 273, 17 S.W. 117, 20 S.W. 72; Howell v. Han-

rick, 88 Tex. 383, 29 S.W. 762, 30 S.W. 856, 31 S.W. 611; Juencke v. Terrell, 98 Tex. 237, 82 S.W. 1025.

In Allen v. Draper, Tex.Com.App., 254 S.W. 783, the court said:

"However, it is equally as well settled that a grant from the state, in order to constitute title or color of title within the meaning of the statute of limitation, must be effectual to convey whatever right or title the state had at the time same was issued; and a patent issued without authority in the one who issues it, or issued contrary to law, is void, and cannot constitute title or color of title. Smith v. Power, 23 Tex. 29; Texas Land & Mortgage Co. v. State, 1 Tex.Civ.App. 616, 23 S.W. 258 (writ refused); Williamson v. Brown, 49 Tex.Civ.App. 402, 109 S.W. 412; Sherwood v. Fleming, 25 Tex.Supp. 408; Mills v. Needham, 28 Tex.Civ.App. 547, 67 S.W. 1097."

In Smith v. Power, 23 Tex. 30, the Court said:

"The only question in the case which remains open to examination is, upon the sufficiency of the defense of the statute of limitations. The defendant pleaded the limitations of three and ten years. To render a possession of three years a bar to an action by the true owner, the defendant in possession must have held under title, or color of title, as defined in the fifteenth section of the statute. Hart. Dig. art. 2391. To constitute such title, or color of title, there must be a 'chain of transfer from or under the sovereignty of the soil.' This necessarily presupposes a grant from the government, as the basis of such transfer. And the grant must be effectual to convey to the grantee whatever right or title the government had in the land, at the time of making the grant. It need not necessarily carry with it the paramount title; but it must be title, as against the government, valid in itself when tested by itself, and not tried by the title of others. It must have intrinsic validity, as between the parties to it; though it may be relatively void, as respects the rights of third persons. If it be absolutely void, a nullity, it cannot be said to be a grant, or the basis of a transfer of the title from the government. The term 'grant' imports that something passes thereby from the grantor to the grantee. But if it is absolutely void, of course, nothing passes by it; it cannot constitute title, or color of title, within the provision of this section of the statute."

Since the Land Commissioner was invested with all necessary legal authority to make the grant, and was acting within the apparent scope of his legal powers, the patent to Mrs. Davis was not void.

The Davis grant is not void for yet another reason. McCombs v. McKaughan, Tex.Civ.App., 195 S.W.2d 194, writ ref., held that the one year statute of limitation (Sec. 4, Art. 5329, V.A.T.S.) applies only to procedural matters before the Commissioner of the General Land Office upon which awards are made and cannot be made to apply so as to extinguish a valid title "outstanding in a third person" to the supposed title awarded by the State and that no title passed under such an award for the reason that the State had no title to convey. Nevertheless, by virtue of that statute, after one year from the date of the sale, neither the State nor anyone else, except the owner of a valid outstanding title, could attack the patent issued by the State. Callahan v. Giles, 137 Tex. 571, 155 S.W. 2d 793; Erp v. Robison, 106 Tex. 143, 155 S.W. 180. The patent obviously had a value to Mr. and Mrs. Davis even though they might be able to prove that no vacancy existed. Equity will not permit them to accept the benefits of their bargain and thereafter to repudiate the obligations assumed thereunder. Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166. The trial court erred

in denying the State's motion for summary judgment.

The judgment of the trial court is reversed and rendered.