**The STATE of Texas et al., Appellants,**

**v.**

**Mary Dan Wilson SANDLIN et al.,**
**Appellees.**

**No. 5691.**

Court of Civil Appeals of Texas.

El Paso.

April 7, 1965.

Rehearing Denied May 5, 1965.

Waggoner Carr, Atty. Gen., Milton Richardson, Asst. Atty. Gen., J. S. Branwell, Asst. Atty. Gen., Austin, for appellants.

Black & Stayton, Austin, for appellees.

FRASER, Chief Justice.

This is a trespass to try title suit filed by appellees against appellant State of Texas (and other parties who have been dismissed), seeking recovery of the fee simple title to certain lands including Section 37, Block D–11, T. C. Ry. Co., which is the land here in controversy. It seems that on August 9, 1881 a deputy surveyor of Pecos County, named Charles Archer, made a survey establishing the boundaries of Section 37, which lies in what is now known as Brewster County, but which at that time was in what was known as Presidio County. The surveyor, Archer, was not authorized to survey in Presidio County, his own district being Pecos County. Section 37 was patented on the Archer field notes by the State of Texas on June 5, 1884. On August 22, 1882, one S. A. Thompson, Deputy Surveyor of Presidio County, surveyed the same territory and described the land in question as Section 62, Block 343, Tex-Mex Ry. Co. In 1887 Brewster County was created from Presidio County by act of the 20th Legislature for the State of Texas.

Appellants argue that the Archer survey, described as Section 37, was void because Archer was surveying outside of the area of his own county and district; that the Thompson survey in 1882 was the legal and proper survey because he was deputy surveyor for that area; that the granting of the patent above referred to was void because it was based on an invalid and void survey; and lastly, that the Validating Act of April 16, 1889 did not validate void surveys where subsequent intervening rights have occurred, and that here, 471.8 acres had, since these surveys, been appropriated to a permanent school fund of the State of Texas. The trial court granted judgment to the appellees.

Appellees argue that the defect was curable and was cured by the patent issued by the State of Texas, and the defect itself by legislation, to-wit, the Validating Act above mentioned.

■ We find ourselves in agreement with the trial court for the following reasons. The cases cited by appellants to support their position that the Archer survey was void are very early cases, and their language indicates that the courts did not mean that surveys conducted by a surveyor outside of his own authorized district were completely, unalterably and incurably void, but were void unless cured or the defect remedied. As for example, in Peacock v. Hammond, 6 Tex. 544, the court indicates that the survey was void because it did not receive the approval of the surveyor, suggesting or implying that it would or could have been validated by approval of the surveyor. Also, in Linn v. Scott, 3 Tex. 57, the court suggested or stated that legislation could have made such survey "good and valid" except for the fact that the suit was already filed when the legislation was passed. These cases, taken in conjunction with the wording of the Validating Act, indicate that a survey of the nature with which we are here concerned, could be validated, and was therefore not incurably void. There are other cases holding that the word "void" is often used interchangeably with "voidable" or "illegal", as appears in 44 Words and Phrases; and so it seems to us that the cases have clearly enunciated that a survey of this nature is not a dead nullity, incurable in any way, but rather constituted a defective survey which was later legalized by patent and a Validating Act. Such language is found in the following cases: Wiener v. Zwieb, 105 Tex. 262, 141 S.W. 771; Overstreet v. Houston County, Tex. Civ.App., 365 S.W.2d 409. Then, of course, there is a long line of cases holding that when a thing is actually void, it can never be cured, is good nowhere and bad everywhere. We believe that the situation here created by the Archer survey was one that was defective but subject to being cured, as set forth above.

We are also faced with the situation here that the State of Texas issued its patent, thereby stamping the approval of the State on the survey. There are several cases that state that a patent constitutes ratification and adoption of a survey. Griffith v. Rife, 72 Tex. 185, 12 S.W. 168; State v. Humble Oil & Refining Co., Tex. Civ.App., 187 S.W.2d 93 (n. w. h.); La. Ry. & Nav. Co. v. State, Tex.Civ.App., 298 S.W. 462; aff'd. Tex.Com.App., 7 S.W.2d 71. The above cases are also authority for the effect of the Validating Act of 1889. This Act expressly provides, inter alia, as follows:

"Sec. 2. That all surveys heretofore made by any county or district surveyor, which would otherwise be valid, shall not be called in question on account of said surveys having been made outside of the proper county or district, but said surveys shall be valid the same as if the said surveyor had jurisdiction in the territory embracing the same.

"Sec. 3. The provisions of this act shall not apply to nor affect the rights of third persons heretofore acquired by virtue of any purchase from the state location or surveys made in accordance with the laws in force at the time of such location and survey."

In passing upon this Act, the Court of Civil Appeals at Waco, in State v. Humble Oil & Refining Co. (supra) set forth very clearly that the Validating Act was an attempt to see that justice was done, and that men would not lose their rights to land because of some misunderstanding or technicality arising from the provisions of the land laws of the Republic. See also Abernathy County Line Consol. etc. v. New Deal R. H. S. Dist., 175 S.W.2d 446 (Civ. App., ref. w. m.), and State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065. In assessing the effect of the matters set forth above, it must be clearly kept in mind that the Archer

survey, upon which the appellees here depend, was first in time, and that the State of Texas did issue a patent valid on its face, based on such survey. It is our feeling and our holding that the Archer survey, defective at the time (1881), was legalized by both the patent issued by the State and the Validating Act in 1889.

 Appellants also urge that the curative acts above referred to with reference to the Archer survey amounted to an unconstitutional disposition of school lands. We cannot agree with this proposition because no boundaries are being shifted here, nor is any vacant land being appropriated. Appellants cite the case of Mills v. Needham, 28 Tex.Civ.App. 547, 67 S.W. 1097, and Eyl v. State, 37 Tex.Civ.App. 297, 84 S.W. 607; but in both those cases the school survey was first in time, contrary to the position prevailing in the case before us. We feel, therefore, that there is no unconstitutional disposition of school lands.

Lastly, appellees bring up the case of Roark v. Smith, described as Cause No. 1934 in the 83rd District Court of Brewster County, Texas, styled F. N. Roark, et al., v. H. G. Smith, et al., which they maintain amounts to a judicial estoppel restraining the State from contesting the validity of the Archer survey. We do not go into this matter as we think it unnecessary, and that it is adequately disposed of by the foregoing paragraphs. However, we should like to point out that appellants' cases, which it is alleged hold that a State cannot be judicially estopped, refer rather to the acts of State employees than to the judgments of duly constituted State courts; as, for example, our Supreme Court, in Texas Company v. State, 154 Tex. 494, 281 S.W.2d 83, speaking through Justice Calvert, stated as follows: "The acts and conduct of its officers and agents cannot estop it from recovering those lands or the value of the minerals produced therefrom." This seems clearly to indicate that in these cases the doctrine of estoppel, as applied to the State, relates to the acts or conduct of its officials rather than to the decisions of its courts.

In summation, we hold that while the Archer survey was defective when made, it was validated and legalized by the issuance of the State patent granted by the State of Texas, June 5, 1884, and also by the Validating Act of April 16, 1889. We further find that this holding does not constitute any unconstitutional disposition of school lands, nor is it in contravention of the State policy with reference to early patents. It is our opinion, therefore, and we so hold, that the decision of the trial court was correct.

Appellants' point of error is therefore overruled and the decision of the trial court accordingly affirmed.